## Hartley's Estate.

*Transfer inheritance tax—Deed of trust for life with remainder over, coupled with power of revocation—Taxation to be assessed as of date of death—Acts of April 22, 1905, P. L. 258, and May 4, 1921, P. L. 341.*

Where the settlor executes a deed of trust, retaining the absolute and entire enjoyment of the income until his death, coupled with an unrestricted power at all times to revoke, change or modify the provisions of the deed, both as to principal and income, the fund becomes subject to transfer inheritance tax in accordance with the provisions of the act in force at the time of his death, as distinguished from the act in force at the time of the execution of the deed.

Appeal from appraisement of inheritance tax. O. C. Phila. Co., July T., 1925, No. 2086.

GEST, J., presiding at the hearing.—Clara Hartley, on Aug. 2, 1917, executed a certain deed in writing, by which she transferred to a trustee all her interest in the estate of her deceased husband, Richard M. Hartley, in trust to invest the same and pay over the net income to her, the said Clara Hartley, for and during her natural life, and upon her death she directed her said trustee to expend the necessary money for the erection of a hospital and infirmary building upon the ground owned by the Northern Home for Friendless Children and for the furnishing of the same, the said building to be known as The Richard M. Hartley Memorial Hospital for Friendless Children, and to pay over the residue of her estate to the said Northern Home for Friendless Children as an endowment fund for the maintenance of the hospital and infirmary and the said home. And the said Clara Hartley further provided: "The provisions of this deed of trust may at all times, both as to principal and income, be revoked, changed or modified by me by writing under my hand and seal, attested by two witnesses, duly acknowledged before a notary public or other officer authorized to acknowledge instruments of writing." By said deed of trust she appointed Frederick J. Geiger trustee, and in the event of his death appointed the Pennsylvania Company for Insurances on Lives and Granting Annuities in his place and stead.

By another deed or instrument in writing, dated Aug. 2, 1917, under her hand and seal, attested by two witnesses, and duly acknowledged before a

notary public, the said Clara Hartley, "under the power and authority reserved by her in said deed of trust," modified the same as follows: She appointed the Pennsylvania Company for Insurances on Lives and Granting Annuities as co-trustee with Frederick J. Geiger under said deed of trust, and transferred and set over to said trustees all of the money, property and securities mentioned and set forth in a schedule of distribution attached thereto, marked Schedule of Assets received by Clara Hartley from the estate of Richard M. Hartley, to be held by them under the terms and provisions of the deed of trust executed on Aug. 2, 1917. The trustees, by writing, accepted the trust therein contained. The schedule of assets attached thereto contains numerous stocks and bonds, valued according to the appraisement thereof in the distribution of the estate of the husband of the testatrix, which securities were received by the trustees on Dec. 12, 1918, and it appears that this deed of trust was recorded in Deed Book J. M. H., 360, page 410, on Dec. 13, 1918.

By another deed or instrument in writing, dated April 13, 1922, under her hand and seal, attested by two witnesses, and duly acknowledged before a notary public, the said Clara Hartley, by virtue of the power and authority reserved by her in said deed of trust, modified the same as follows: "I do hereby direct and declare that in the event of my death the said Trustees, or their successors in the trust, shall pay to the Executors under my will, or the personal representatives of my estate, out of any accumulated interest due me at the time of my death and the principal of the said Trust funds such amount of money as my Executors, or the representatives of my estate, may be called upon or be required to pay to discharge any and all inheritance, succession, transfer and estate taxes, Federal and State, upon the said Trust funds upon the basis of the highest percentage of such taxes which may be assessed or levied if such Trust funds had constituted part of my estate, and the balance of the said Trust funds, principal and interest, remaining after such payments are made shall be applied and paid over in manner and form and to the persons as I have directed in the said Deed of Trust, it being my desire and intent that no part of my estate, which does not constitute a part of the said Trust fund, shall be diminished by reason of any taxes which may be required to be paid upon any part of the said Trust funds or by reason of the same being considered a part of my estate passing to my personal representatives, or the legatees under my Will." The trustees continued to administer the trust and paid the income to Clara Hartley until her death on Nov. 29, 1924.

On June 29, 1925, the Register of Wills appraised the estate passing under the deed of trust at $198,842.55, and assessed the tax at 10 per cent., under the provisions of the Act of June 20, 1919, P. L. 521, and the Act of May 4, 1921, P. L. 341, the tax so assessed being $19,884.25. From this assessment the Pennsylvania Company for Insurances on Lives, etc., and Frederick J. Geiger appealed, on July 20, 1925, and the Northern Home for Friendless Children also appealed, on the ground that the tax should be assessed at the rate of 5 per cent., under the Act of April 22, 1905, P. L. 258, which was in force when the trust was created.

It appears from the pleadings and the statements of counsel at the hearing that Clara Hartley was in good health when she executed the deed of trust in 1917 and that at that time she did not comtemplate death, and that the executors of Clara Hartley never called on the trustees to make any payment of inheritance or estate taxes, as provided in the second supplementary deed of trust of April 13, 1922, and that the taxes were assessed against the trustees.

Hartley's Estate.

The Commonwealth relied principally upon Lines's Estate, 155 Pa. 378 (1893), in which case Lines, on May 6, 1887 (the date is stated on page 387), delivered to a trust company, as trustee, certain bonds in trust to pay over the income to him during his life, and on his death, which occurred in 1890, to divide the securities among certain persons named in the deed. The deed of trust contained a clause in which Lines reserved "the right and power by an instrument in writing to be delivered to the trustee, to alter, change, modify or revoke all disposition and direction as to transfer and dispositions made and to be made of said property after the decease of the first party (Lines)." This power, however, was never exercised and the trustee paid to Lines the income of the trust estate during his life, and after his death divided the principal according to the provisions of the deed. The Supreme Court held that the estate was taxable under the Act of May 6, 1887, P. L. 79, on which day it may be noted the deed of trust was executed. The grounds of the decision are indicated in the following excerpts from the opinion of Chief Justice Sterrett: "In view of the undisputed facts, it is strange that any question should have been seriously raised, either as to the right of the Commonwealth to the tax on the securities or the liability of the beneficiaries to pay their respective proportions thereof. Mr. Lines was not only the beneficial owner of the securities prior to and at the time of his decease, but under the reserved power of modification, revocation, etc., he had absolute control of the disposition to be made of the securities upon his decease. At any time prior thereto, he could have modified or revoked the trust in favor of the beneficiaries named in the deed. It is true the legal title to the securities was in the trust company, but, aside from mere compensation for its services as custodian of the property, the company had no beneficial interest therein. In any proper sense of the term, the securities were the personal property of Mr. Lines. They were his to enjoy during his lifetime, and his to dispose of, in any manner he saw fit, at any time prior to his decease. He chose to leave the trust in favor of the beneficiaries unaltered and unrevoked, and, as he intended, it took effect, in enjoyment, immediately after his decease. . . . The manifest purpose of our collateral inheritance tax law is to subject property, limited by deed in the manner stated in the statute, to taxation, because it is still substantially the property of the grantor and does not actually pass, nor is it intended to pass, to the collateral beneficiaries until his death, and, hence, it is essentially similar in that respect to a devolution of property by testacy or intestacy upon the death of the owner."

In the earlier case of Reish v. Com., 106 Pa. 521 (1884), Reish, in his last illness and five days before his death, conveyed certain real estate in fee to his brother and only heir for a nominal consideration. At the same time, his brother executed a bond conditioned for the faithful payment to Reish, his executor, administrators or assignees, of the net income of said property. On Reish's death it was held that the ownership of the property conveyed to his brother did not take effect in enjoyment until after Reish's death, and, therefore, on the happening of that event, the property was subject to collateral inheritance tax. It is true that the conveyance in this case was made in immediate contemplation of death, but the Supreme Court remarked, on page 526: "The policy of the law will not permit the owner of an estate to defeat the plain provisions of the collateral inheritance law by any device which secures to him for life the income, profits and enjoyment thereof; it must be by such a conveyance as parts with the possession, the title and the enjoyment in the grantor's lifetime."

Hartley's Estate.

In the present case, Clara Hartley was entitled, under the deed of trust, to the absolute and entire enjoyment of the income until her death, and she retained the absolute and unrestricted power at all times to revoke, change or modify the provisions of the deed, not only as to the principal, but also as to the income, in this case her power being in terms even broader than that in Lines's Appeal. It is true that the power was required to be executed not merely in writing, as in Lines's Appeal, but by a writing signed and sealed, attested by witnesses and acknowledged, but this did not restrict her power; it merely indicated the method of its formal execution.

I, therefore, under the authority of Lines's Appeal, feel constrained to dismiss the appeal from the Register of Wills. I should, however, refer to the authorities cited by Mr. Lavis in his very able and exhaustive argument.

In Houston's Estate, 276 Pa. 330, there was, as in this case, a deed of trust by which the income was to be paid to the settlor for life, with remainder at her death to the persons named. The deed was made in 1918 and the settlor died June 27, 1921, after the passage of the Act of May 4, 1921, P. L. 341, which increased the rate of tax to 10 per cent., at which rate the tax was assessed. This court held, and our opinion was affirmed by the Supreme Court, that the tax should have been assessed at 5 per cent., which was the rate imposed by the Act of May 6, 1887, P. L. 79. We said: "The grantor in the deed parted with her title before the passage of either of these acts of assembly. (Acts of June 20, 1919, P. L. 521, and May 4, 1921, P. L. 341.) She reserved no right of revocation, nor did she retain the right of control, for her power, exercisible jointly with the trustee to change investments, is a very different thing; the terms of the trust were unchangeable. The deed was not executed with any intent to defraud the Commonwealth or to evade the law, nor was it made in such contemplation of death as to bring it within any applicable decision. As soon as the deed was executed, Freeman had a vested right in the property, only defeasible in case of his death (which has not occurred), when it would pass under his will, and his prospective right would have passed by his assignment to others."

The distinction between Houston's Estate and the present lies in the power of revocation. Such a power did not exist in Houston's Estate. On the contrary, the deed was in terms irrevocable, as appears from the report of the case and the adjudication of the Auditing Judge in 2 D. & C. 334.

In Dolan's Estate, 279 Pa. 582, the deed of trust was made by Mrs. Dolan in 1908, and its terms were to pay the income to her children and their wives and descendants for twenty-one years after the death of her last surviving lineal descendant living at the time of her death; and the deed contained the following power of revocation (page 586): "The said Sarah Brooke Dolan at any time during her life hereby expressly reserves to herself the right to revoke this trust in its entirety or from time to time add to, alter or amend the same as to her shall seem fit." Mrs. Dolan died on Aug. 17, 1920, without having exercised her power, after the passage of the Act of June 20, 1919, and the court dissallowed the claim of the Commonwealth to tax at 2 per cent., which decree was affirmed by the Supreme Court, 279 Pa. 582, who said, after referring to Reish v. Com., 106 Pa. 521: "We do not have here a case of this character; speaking more particularly on the subject of revocation, it being the point stressed in argument, the property no longer belonged to the grantor; she had divested herself not only of physical control of the specific things, but had given complete and sufficient evidence of the transfer of all ownership. . . . The annexation of the power of revocation does not affect the grantee's power of enjoyment or prevent the sale of the property,

privately or judicially, though the grantee takes the estate with the possibility of its being divested by the happening of an uncertain event, to wit, the exercise of the power of revocation. Through the exercise of that right reserved, the property may be recalled. But the right to revoke, unexercised, is a dead thing. Its presence in a deed does not alter the character of the instrument or estate granted; to all intents and purposes, title and possession pass just as effectively as any deed or grant could make it, continuing in that state so long as the power of revocation lies dormant. . . . How, then, could the extinguishment of the power to revoke the deed of trust by the death of Mrs. Dolan—that is all death accomplished—work a transfer of property? The right of revocation, standing alone, is not tantamount to a property right in the settlor; it possesses none of the attributes of property. Mrs. Dolan did everything possible in 1908 to divest herself of the specific property. When she died in 1920 there was nothing for her, the law or any one to do to complete the act. Revocation is neither an estate nor property and cannot pass at death. A power of revocation is analogous to a power of appointment, which, under the common law, is not property and can be exercised only by the person in whom it resides."

It thus appears that in neither Houston's Estate or Dolan's Estate did the two important facts concur, namely, the reservation of income and beneficial enjoyment to the settlor, and the reservation of a power of revocation. In the present case both exist.

Hieskell's Estate, 4 D. & C. 592, was also referred to. This case came close to the line, but there was in the deed no power of revocation during the settlor's lifetime, although there was a provision that he could appoint by will one-third of the income for the benefit of his widow. We were of opinion that the case fell within the doctrine of Houston's Estate and Dolan's Estate, and no appeal appears to have been taken to the Supreme Court.

I am, therefore, of opinion that the present appeal should be dismissed.

Upon review of the record, I incline to the opinion that the executor or the personal representatives of Clara Hartley should be made parties hereto, and a petition for their intervention, if presented, will receive the attention of the court.

Exceptions were filed by the Pennsylvania Company for Insurances on Lives, &c., and Frederick J. Geiger, trustees.

*David Lavis*, for exceptions; *H. Horace Dawson*, contra.

VAN DUSEN, J., April 30, 1926.—We regard this case as ruled by Lines's Estate, 155 Pa. 378. That case held that the combination of a life estate in the settlor and a reserved right of revocation showed a virtual ownership by the settlor. Whatever may be said in one case or another as to one of these elements standing alone, no other case deals with the combination, as the Hearing Judge demonstrates; and the authority of Lines's Estate remains unshaken. The present case also contains both elements, and it follows from the virtual ownership by the settlor up to the time of her death that the transfer was not effective until that time.

Moreover, the settlor exercised the power in 1922, after the rate of tax had become 10 per cent., in order to modify the deed of trust. Slight though the modification was, it cannot be said that the transfer was complete before the Act of 1921, when part of the terms of the trust were determined thereafter. Whether we regard the death of the settlor or the last alteration of the terms of the trust as the date of transfer when the tax attached, the result is the same. Exceptions dismissed.