## Arrison's Estate.

*Collateral inheritance tax—Trust created by settlor for benefit of his wife and for his own benefit should he survive her, with remainder to his right heirs on the death of himself and wife without issue.*

Where a settlor conveyed real estate to trustees in trust to pay the net income to his wife for life; on her death, to pay the income to himself if alive; and, if dead, then in trust for their children then living and the issue of any deceased; and if she should survive him and die without descendants, then in trust for his right heirs; and thereafter died in her lifetime, the Commonwealth cannot collect collateral inheritance tax, as whatever right he may have had under the deed was extinguished by his death and all that he had passed out of him when the deed was delivered.

Exceptions to rulings of hearing judge. O. C. Phila. Co., April T., 1925, No. 1666.

*Albert W. Sanson* and *Bevan A. Pennypacker,* for exceptants.

*Abraham Berkowitz,* contra.

LAMORELLE, P. J., Nov. 22, 1926.—The contention of the Commonwealth is that collateral tax at the rate of 5 per cent. is now due and payable on the present value of an estate, which estate passed absolutely from the grantor by deed executed in 1873, some eighteen years before his death.

On June 18, 1873, Samuel Arrison (his wife, Mary F., joining in the deed) granted and conveyed unto James M. Arrison, in fee, certain real estate in the City of Philadelphia (therein specifically described), *in trust,* to pay the net income to his wife, Mary F., for life; on her death to pay same to Samuel Arrison (grantor in the deed) for his life, if alive; if dead, then in trust for their children then living and the issue of any deceased; in event that she should die without descendants, Samuel Arrison being then dead, then in trust for the right heirs of Samuel Arrison. The trustee was given the right to sell with the consent of Mary F. and to invest in legal securities.

This deed was delivered and duly recorded; the trustee entered into possession and he and his successor in the trust have had exclusive possession and control ever since.

Eighteen years after the execution of this deed, Samuel Arrison died; with his death ended all rights which he had, or might have had, in and to the equitable *life* interest which was to become his contingent on his surviving his wife. Mary F. Arrison, the wife, died in the year 1924 without

living descendants. Upon an accounting of the trust fund, the real estate having been sold in 1909, the Court of Common Pleas No. 3, by decree dated May 4, 1925, directed distribution of the proceeds among the right heirs of Samuel Arrison, to be ascertained as of the death of Mary F. Arrison, subject to tax, if any.

Afterwards, on May 22, 1925, the Commonwealth assessed taxes on such balance, $13,708.92, at 5 per cent., with interest at 12 per cent. from Feb. 25, 1924.

An appeal was taken to this court, and, coming on for hearing, the judge who presided sustained the register's ruling, having first, however, reduced the sum taxable to $12,686.96, and fixed interest at the rate earned to March 23, 1925, and thereafter at 12 per cent.

Hence, these exceptions by the distributees, which go, first, to the payment of any tax; and, secondly, to the rate of interest.

The right to assess tax at the rate of 5 per cent. is found in the act originating collateral inheritance tax in this Commonwealth, that of April 7, 1826, P. L. 227 (2½ per cent. increased to 5 per cent. by section 14 of a General Act of April 22, 1846, P. L. 486), or the Act of May 6, 1887, P. L. 79.

Counsel for the Commonwealth argues that the tax is imposed under the Act of 1887 (supra), despite the fact that title had passed out of the grantor some fourteen years before the date of the enactment. This act is retroactive as to devises, bequests or descent (Jewell's Estate, 235 Pa. 119), but section 3 thereof makes no mention of conveyances. Be that as it may, both acts (that of 1826 as well that of 1887) impose a tax on estates passing from one seised or possessed thereof, either by will or by the intestate law, or by deed intended to take effect in possession or enjoyment after the death of the grantor.

The substantial question, then, is this: Where one denudes himself of title to and possession and enjoyment of real estate in his lifetime, without intent to evade or defraud, and provides that upon a certain contingency he may receive the income thereof, which contingency does not occur, may his estate be taxed as if the *corpus* passed from him as of the time of his decease?

One readily understands what is meant when we speak of something passing on a person's death. It passes then, and solely because of the death, in such way as he may designate or as the law may decree. The clause of these taxing acts referring to transfers by deed recognize the fact that, instead of a will, a deed might be made effective on the death of the grantor and tax thereby avoided. That is the reason for the insertion of this third means of transfer. It has been recognized in all of the cases wherein these acts apply. A man may not retain control for life, either openly or by subterfuge; may not reserve this right, with the further right of recall or of changing the beneficiaries, without subjecting the estate to tax; and this is what is meant when we speak of a conveyance intended to take effect in possession or enjoyment after the death of the grantor: Lines's Estate, 155 Pa. 378; Reish v. Com., 106 Pa. 521; Todd's Estate (No. 2), 237 Pa. 466.

Nothing in the law, however, bears upon a conveyance such as the one now before us. Mr. Arrison parted with the title without reservation and with no right of revocation. It was beyond his power to control or change, and the possible contingent interest he might have received never materialized, nor could it while his wife, entitled to unlimited enjoyment of income, lived, and she lived for thirty-three years after his death. His death did not fix the time for some one else's possession or enjoyment; that was done by delivery of the deed eighteen years before he died.

Arrison's Estate.

It must be admitted that he had a contingent equitable life estate in the property—not reserved out of the grant, but as part of the trust. Such estate, contingent on his surviving his wife, never became effective, in that he predeceased her by some thirty-three years. That which passed from and out of him because of the deed never came back; his death in 1891 did not change nor even effect the provisions of the deed, save and except to eliminate his contingent equitable life estate. If any tax on *his estate* in these pieces of realty was to be assessed, then was the time to assess it, and it should have been a tax on the value of his contingent life estate, of which he was never possessed nor even enjoyed. We must assume that if any such tax was payable, the Commonwealth valued such interest and collected the tax thereon at that time, and because of his death; or else concluded that no tax was due. Presumption of payment from lapse of time applies to the Commonwealth as well as to any other suitor: Stewart's Estate, 147 Pa. 383; Ash's Estate, 202 Pa. 422.

In Houston's Estate, 2 D. & C. 334, 276 Pa. 330 (and this is the case upon which the hearing judge bases his ruling), it was agreed by counsel that a tax was due. The one question submitted was whether it should be 5 per cent. under the Act of 1887 *(supra)*, or 10 per cent. under the Act of June 20, 1919, P. L. 521, as amended by Act of May 4, 1921, P. L. 341. In that case the deed was made in 1918. The equitable life-tenant died in June, 1921. She had reserved to herself, in and by the deed by which she conveyed her own property, an equitable life interest therein, and enjoyed the benefit because of such deed from its date until the time of her death. On its facts, the case differs from that now under consideration, for here the grantor conveyed the estate in 1873 and never thereafter enjoyed any benefit.

In Dolan's Estate, 3 D. & C. 264, 279 Pa. 582, the conveyance in trust was outright, but there was a right of revocation, and this right of revocation, which was tantamount to a power on the part of the settlor to vest in herself the title at any time, was held to amount to nothing, in that the settlor had not in her lifetime exercised it. Said Mr. Justice Kephart, at page 589: "The annexation of the power of revocation does not affect the grantee's power of enjoyment, or prevent the sale of the property, privately or judicially, though the grantee takes the estate with the possibility of its being divested by the happening of an uncertain event, to wit, the exercise of the power of revocation. Through the exercise of that right reserved, the property may be recalled. But the right to revoke, unexercised, is a dead thing. Its presence in a deed does not alter the character of the instrument or estate granted; to all intents and purposes, title and possession pass just as effectively as any deed or grant could make it, continuing in that state so long as the power of revocation lies dormant." No tax was allowed.

Hartley's Estate, 8 D. & C. 164, wherein many of the authorities are considered, is illustrative of a transfer wherein the tax is properly imposed.

We are of opinion that the principles of these cases govern, and that a right in the grantor, which never was nor could be reduced to possession and enjoyment because of the continued existence of an equitable life estate in his wife from the inception of the trust in 1873 to the time of her death in 1924, was not such an interest in him as passed to any one at the time he died—whatever right he *might have had* was extinguished by his death, and all that he *did have* passed out of him in 1873, when the deed was delivered.

If we understand the argument made by the Commonwealth, it is that title did not vest in the right heirs until the death of the wife in 1924, and, therefore, nothing passed from the settlor until that time. This theory is at

variance with a tax of 5 per cent. In 1924, collaterals were taxed under the Act of May 4, 1921, P. L. 341, and the rate was 10 per cent., not 5 per cent. But in the *interim* title was not in the settlor; and while it could not be determined until the death of the wife who would be her husband's right heirs, and, therefore, until then no tax (if any) was to be paid, the class was defined as of the date of the deed in 1873 (see Hieskell's Estate, 4 D. & C. 592), though the individuals were not then ascertainable. Taking effect in possession and enjoyment after the death of the grantor presupposes an estate in the grantor with or without right of revocation until that time in order to justify a tax.

The delay in paying the tax, if any was due, was that of the exceptants. Mr. Boenning, for the Commonwealth, filed an answer immediately after the service of citation in July, 1925. Counsel for petitioner filed his replication ten months thereafter. If he had acted promptly, the case would have been at issue for a hearing in September, 1925. If any tax is, therefore, to be paid, we uphold the hearing judge's ruling as to interest charges thereon.

All exceptions as to the levy of tax are sustained; those which go to the interest charges are dismissed *pro forma.*

THOMPSON, J., did not sit.

VAN DUSEN, J., concurring.—At the hearing I did not look much further than the language of the Act of April 7, 1826, P. L. 146, which was the statute in force in 1873 when this deed was made. That act taxed "all estates . . . transferred by deed . . . intended to take effect in possession or enjoyment after the death of the grantor." This apparently lays a tax on the transfer by deed of title to an estate which is to take effect in possession or enjoyment after the death of the grantor, whether the grantor retains any benefit or not, and whether anything passes from him at death or not. This view is supported by the reasoning of the opinions in Reish v. Com., 106 Pa. 521, and Seibert's Appeal, 110 Pa. 329, and it seemed to me at the time to be the ground of decision in Houston's Estate, 276 Pa. 330.

In the Reish case it was expressly held that the words in the statute omitted from the above quotation, "passing from any person who may die seized or possessed of such estate," applied only to estates passing by will or descent and not by deed. In the Seibert case the grantor retained nothing for himself.

Other cases, however, take what seems to me to be a radically different view. In Lines's Estate, 155 Pa. 378, the grantor retained a life estate and a power of revocation, and, in upholding the tax, the court said: ". . . In any proper sense of the term, the securities were the personal property of Mr. Lines. They were his to enjoy during his lifetime, and his to dispose of, in any manner he saw fit, at any time prior to his decease. . . . The manifest purpose of our collateral inheritance tax law is to subject property, limited by deed in the manner stated in the statute, to taxation, *because it is still substantially the property of the grantor,* and does not actually pass, nor is it intended to pass, to the collateral beneficiaries until his death, and, hence, it is essentially similar in that respect to a devolution of property by testacy or intestacy, upon the death of the owner."

The same view is taken in Du Bois's Appeal, 121 Pa. 368. It is also the ground of decision in Hartley's Estate, 8 D. & C. 164, in which I wrote the opinion, and in Dolan's Estate, 279 Pa. 582, where it was held that the retention of a power of revocation by the grantor, without any benefit to himself, did not leave something in him which passed from him at his death, and, therefore, there was no tax. And, finally, in Spangler's Estate, 281 Pa. 122,

Arrison's Estate.

the Supreme Court expressly adopted this view, and quoted with approval, as above, from Lines's Estate.  The question in the Spangler case was whether the provision under discussion, as it appears in the Act of June 20, 1919, P. L. 521, was covered by the title of that act, which refers only to estates "passing from a decedent at the time of his death," and it was held that the title was sufficient, because the settled interpretation given to the language under discussion was that the tax was imposed on something which in substance passed from the decedent.

The true criterion, therefore, is that expressed in the foregoing quotation from Lines's Estate, and the Reish and Seibert cases, and even the statute itself, are not safe guides.  In the present case there is no power of revocation, and the life estate to the grantor is subject to a prior life estate, so that it cannot be said that the property remained his.  In Houston's Estate there was no power of revocation, and no such dominion by the grantor as this view requires.  Nothing, therefore, passed at death; and tax as of the date of the deed was conceded by the taxpayer (2 D. & C. 334), probably with the words of the statute before him.