## Lines's Estate.   Lines's Appeal.

[Marked to be reported.]

*Collateral inheritance tax—Deed of trust.*

The right of the commonwealth to collateral inheritance tax is not defeated by a conveyance or transfer of title to the property during the lifetime of the owner, nor by possession taken under such conveyance, if the enjoyment of the property conveyed is not intended to take effect until the death of the grantor.

Decedent in his lifetime executed a deed of trust conveying to a trust company in New York city certain bonds of a Missouri railroad corporation, and certain stock of a New Jersey manufacturing corporation doing business in that state. The trustee was to collect the interest and dividends of the securities and pay them over to decedent during his life, and upon his decease to certain beneficiaries named. The trust deed reserved to decedent the power " to alter, change, modify or revoke all disposition and direction as to transfer and dispositions made and to be made of said property " after his decease. Decedent was a citizen of Pennsylvania, domiciled in that state both at the time the deed was executed and at his death. He made no change in the beneficiaries mentioned in the deed. Some of the beneficiaries were citizens of Pennsylvania and domiciled therein, and some of another state. None were resident of New York at the date of the execution of the deed nor at the death of decedent. No debts were owing by decedent in New York. No ancillary administration

had been raised there, and no succession tax had been paid in that state. *Held*, that the beneficiaries named in the deed were liable for the collateral inheritance tax on their respective shares.

*Valuation of estate—Act of May 6, 1887.*

The intent of the Act of May 6, 1887, P. L. 79, is that the tax accrues at decedent's death, unless enjoyment is postponed by a life estate in another, and, except in the case of such postponed enjoyment, the value at the time of the death of the testator, intestate or grantor, is the basis for calculating the amount of the tax.

*Deduction of expenses—Counsel fees of distributees.*

The tax is imposed on what remains for distribution after the expenses of administration, debts and rightful claims of third parties are deducted. This will not include the expense of counsel in litigation among persons claiming as distributees of the decedent's estate.

Argued March 9, 1893.    Appeal, No. 279, Jan. T., 1893, by William E. Lines et al., from decree of O. C. Northampton Co., dismissing appeal from order of register of wills imposing collateral inheritance tax.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Appeal from appraisement of collateral inheritance tax.

The facts are stated in the opinion of the Supreme Court.

The opinion of the court below, after reciting the facts, was as follows, by ALBRIGHT, P. J., of the 31st judicial district, specially presiding:

"On behalf of the appellants it is contended that no collateral inheritance tax can be imposed in this state for said bonds and shares of stock; that said property in the lifetime of the decedent was held and was in New York, and in that state it was delivered to the appellants; that the decision of the case of Lines v. Lines, 142 Pa. 149, is an adjudication of this matter in appellants' favor; that the collateral inheritance act of 1887, excepting the provisions relative to collecting, is unconstitutional, and therefore prior acts must be regarded in ascertaining what estates are subject to such tax, and that the estate now in question is not within said prior acts; and further that if the tax is imposed it ought to be on the value of the property at the time appellants received it, after deducting the sum expended by them for fees of counsel and the expenses of the trustee.

"Said act of 1887, P. L. 79, is entitled 'an act to provide

for the better collection of collateral inheritance taxes.' It provides not only for the collection of such taxes, but declares what estates shall be subject thereto. The purpose seems to have been to re-enact all laws on the subject of collateral inheritance taxes in force at the time of its passage. In Com'th's Ap., (Cooper's Est.,) 127 Pa. 435, and in Bittinger's Est., 129 Pa. 338, the question of the constitutionality of said act was adverted to but not decided. A decision thereof was not necessary. In Del Busto's Est., 23 W. N. 111, the learned judge, delivering the opinion, compared the provisions, relative to the estates taxed, of the new act with the prior ones. He demonstrates that the only new feature as to subjects of taxation in the act of 1887 is the provision that there shall be taxable ' all estates . . . . situated within this state,' while the act of 1826, 9 Sm. L. 146, declares that ' all estates . . . . passing from any person who may die seized or possessed of such estate, being within this commonwealth, shall be taxable.' The 3d section of the act of 1850, P. L. 170, provided that the words ' being within this commonwealth ' shall be so construed as to relate to all persons who have been at the time of their decease or now may be domiciled within this commonwealth, as well as to estates. This act was passed in consequence of the decision in Com. v. Smith, 5 Pa. 143, and was construed in Short's Ap., 16 Pa. 63.

" The new act purports to provide what estates shall be subject to the inheritance tax.

" Inasmuch as Jesse Lines was domiciled in this state, both where he made the deed and where he died, and inasmuch as, owing to the peculiar kind of property here in question, the effect is the same, whether the first section of the act of 1826 or the first section of the act of 1887 is applied—whether it be considered whether said stocks and bonds were or were situated in this state, there is no occasion to consider the validity of the questioned parts of the act of 1887.

" At this point notice ought to be taken of the argument of appellants' counsel that the provisions of said act of 1850, making the act of 1826 apply to all persons now (then) domiciled within the state, does not embrace the case of this decedent, the fact agreed to being that he was a resident of Easton only since 1860. That is not quite the way it is stated in the agree-

ment; it is that he resided at Easton for upwards of 30 years preceding his death. But even if it be taken that he was not a resident of this state in 1850, this argument must fail. In Short's Ap., supra, it was held that it was not unconstitutional to give said act of 1850 a retrospective effect, Chief Justice GIBSON remarking : ' More pointed words to make the act retrospective as well as prospective could not have been chosen.' While what was said as to prospectiveness was not required by the case, yet there is good reason to believe that the whole expression quoted was the statement of a well considered opinion, and as such it is entitled to great weight. Besides, the view that the act is prospective has been entertained by the legal profession and all interested for many years. I conclude without hesitation that the acts of 1826 and 1850 apply to this decedent so far as his domicile is concerned.

"As to the property in question and its situs, the material part of the act of 1826 is ' All estates, real, personal and mixed of every kind whatsoever passing from any person, who may die seized or possessed of such estate being within this commonwealth either by will or under the intestate laws thereof, or any part of such estates or interest therein transferred by deed, grant, bargain or sale made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor to any persons or bodies politic or corporate in trust or otherwise other than to the use of father . . . . are hereby made subject to a tax.' As already stated, the act of 1887, in substantially the same terms, subjects to tax all estates situated within this state.

"Jesse Lines by his deed transferred the bonds and stock to the trust company, but the title of the latter was merely nominal. He reserved the enjoyment thereof to himself during his lifetime. Subject to that use, he made them the property of William E. Lines and the nephews and nieces, subject also to his right thereafter to give them to some one else. In Du Bois's Ap. 121 Pa. 368, the conveyance vested the grantee with a naked legal right, the enjoyment being postponed until after the grantor's death—the latter reserving substantially the enjoyment of the estate during his lifetime ; it was held that the property was subject to the collateral inheritance tax. Reish v. Com., 106 Pa. 521, decides that the commonwealth's right to collateral inheritance tax is not defeated by a conveyance or

transfer during the lifetime of the owner, nor by the possession taken under such conveyance, if the enjoyment of the property conveyed is not intended to take effect until the death of the grantor. It was said by Justice CLARK that the law can only be defeated by such a conveyance as parts with the possession, the title and the enjoyment during the grantor's lifetime.

" The effort here is to tax that which said beneficiaries came into the enjoyment of upon the death of Jesse Lines. That the property was in Pennsylvania not only in contemplation of law, but actually, before Jesse Lines carried it to New York to hand it to the custodian thereof is not disputed (the trust company was merely a custodian of it for compensation). It would seem that the right of the commonwealth to the tax demanded must be plain, without further demonstration.

" Is not he who has the sole right to enjoy personal property so long as he lives—to declare who shall possess it after death shall have deprived him of the power to enjoy it longer, changing such disposition as often as he chooses, whose disposable interest would bring as much as the property was worth—the owner thereof, rather than the one in whose name the naked title is, who takes care of it for a stipend, and whose interest would sell for nothing ? For so practical a purpose as taxation, [it must be regarded that Jesse Lines, not the trust company, owned the stocks and bonds. Beyond a doubt the situs of the property for purposes of taxation, including the imposition of collateral inheritance taxes, was in Pennsylvania.] [2] That this is so, and that the courts of this state recognize a distinction between tangible and intangible personal property, is shown by many cases. The following are a few of the authorities on this point referred to in the argument of counsel: Capital stock owned by a citizen of Pennsylvania in a corporation located in another state is taxable to him personally at the place of his residence for state and county purposes: McKeen v. Northampton Co., 49 Pa. 519. In Orcutt's Ap., 97 Pa. 179, after stating the general rule to be that the situs of personal property follows the owner, but for particular purposes some species of personal property may have a situs distinct from the legal one, the court held that the said qualification of the rule did not apply to the property in question in that case. It consisted of bonds of the United States held by a citizen of New Jersey,

who died and whose estate was administered there, the bonds being temporarily in Pennsylvania for safe keeping, the court remarking, per Justice STERRETT, that there was no reason why such property should for any purpose have a situs different from the domicile of the owner. It was further said that the act of 1849 (P. L. 572, relative to collateral taxes), which provided that, if a nonresident of the state should die leaving real or personal estate within this state, the same should be subject to collateral inheritance tax, was intended to embrace only personal property of a tangible nature actually situated or used for business purposes within this state, not mere certificates of indebtedness such as government bonds, whose situs necessarily followed the owner's domicile. To the same effect are Kintzing v. Hutchinson, U. S. C. C. (per Justice STRONG), 7 W. N. 226, and Allen v. Savings Fund, in the same court (per Judge BUTLER), same book, 231. In Kintzing v. Hutchinson it is intimated that the act of 1849 is repealed by the 9th section of the act of 1858, P. L. 470. It is still in force : Thayer v. Com., 12 W. N. 553. In Com'th's Ap., (Harguindeguy's Est.,) 11 W. N. 492, the testatrix was domiciled and died in Cuba, giving all her estate to collateral relatives also domiciled abroad. At the time of her death she owned United States loans registered in the name of her agents, who resided in this state, and also certain loans of municipal and private corporations within this state, the certificates of which were in the hands of said agents; ancillary letters c. t. a. were taken out in this state. It was held that the executor was not liable to this state for collateral inheritance tax. The Supreme Court disposed of the appeal by referring to the decision of Orcutt's Appeal. In Thayer v. Com., supra, the decedent died domiciled in New York ; at the time of his death he was the 'owner of a hotel property and certain personal estate ' in Pennsylvania, which passed to collateral relatives ; the whole was declared to be liable to the collateral inheritance tax under said act of 1849. Evidently the personalty consisted of tangible property. In Small's Estate, 151 Pa. 1, the controversy was whether the interest of a nonresident decedent in a partnership, the property of which consisted principally of lands, merchandise, flour, grain and the like, in this state, was subject to collateral inheritance tax. It was held that it was because it was tangible property.

" What of the contention of appellants' counsel that the decision of Lines v. Lines is an adjudication of this matter adverse to the commonwealth? They insist that the statement in the opinion that the trust deed was a New York contract, the trustee a New York corporation, and that the court of common pleas of this county had not jurisdiction, was a decision that the property was owned and situated in New York. The reply is that said decision was a ruling of the questions presented by that case and nothing more. Concerning the property now in question, it was adjudged that the deed to the trust company was not in fraud of the rights of the plaintiff as widow, and that the objection that the instrument was testamentary could not be sustained because it was a New York contract and the court of common pleas had not jurisdiction.

" It is not a question now whether said writing is testamentary. The effort of the commonwealth is not to have this court adjudge that said stocks and bonds or their proceeds are a part of the estate of the decedent; on the contrary, it is to have it declared that the decedent in his lifetime was possessed of said property and disposed of it by his deed, so that these appellants at his death came into the possession or the enjoyment thereof. Therefore the decision of Lines v. Lines does not affect this case. The commonwealth's contention as to the facts is established—these appellants upon the death of decedent came into the possession and enjoyment of the stocks and bonds (in his lifetime they had neither possession nor enjoyment) and the same are subject to the inheritance tax.

" As to the amount of tax to be exacted. On behalf of the appellants it is contended that if the tax is imposed it ought to be upon the value of the stocks and bonds at the time the law permitted the beneficiaries to receive them, not what they were worth when the donor died. An injunction of a court in the city of New York made at the instance of the widow prohibited the delivery of the property before the time of its actual transfer to the appellants; it was modified so as to release one half on or about Sept. 30, 1890, and dissolved on or about May 14, 1891. The whole was of the value—on July 22, 1890, of $134,460—on Sept. 30, 1890, of $133,277.50, and on May 14, 1891, of $122,545.

" The statute imposes five per centum on the estate passing

to the party who takes under a will or the intestate laws, and upon the estate which comes into possession or enjoyment by virtue of a deed or grant upon the decease of the grantor; then it provides that where there is a life estate as to the remainder the tax shall not be payable nor interest begin to run until the person liable shall come into actual possession by the termination of the life estate, and the tax shall be assessed on the value at the time the possession accrues; further, that if the collateral tax is paid within three months after decedent's death, a discount of three per centum shall be allowed, and if not paid at the end of one year from decedent's death interest shall be charged at the rate of twelve per centum per annum on said tax, but where, owing to claims, litigation or other unavoidable cause of delay the estate or a part thereof cannot be settled at the end of the year, six per centum per annum shall be charged on the tax arising from the end of such year until there be default, provided that, where the estate withheld by litigation or other cause of delay has not been or is not producing six per centum per annum, the parties entitled shall not be compelled to pay a greater amount as interest than they may have realized or shall realize during the time of such delay: Act of 1887, secs. 1, 3 and 4.

" It will be observed that the appellants actually received half the property within three months and the other half within one year after the death of Jesse Lines.

" Plainly the intent of the statute is that the tax accrues at decedent's death, unless enjoyment is postponed by a life estate in another, and, except in the case of such postponed enjoyment, the value at the time of the death of the testator, intestate or grantor is the basis for calculating the amount of the tax.    The estates passing from the decedent and those coming into possession and enjoyment are taxed, and their value when they pass or come into possession or enjoyment is to govern.    That is the time of decedent's death.    For estates in remainder the statute makes an exception.

" The act of 1887, sec. 12, provides that the register shall appoint an appraiser as often as occasion may require.    There may be an appraisement sooner or later after the decease.    The act contemplates that the appraiser shall value what vested by the death—that is, what the estate was worth when it vested.

" In this case the appointment and appraisement were made on July 8, 1891; the appraiser certifies to the value of the estate at the time of decedent's death; the items here in question were valued at $138,490; the facts in this proceeding indicate that $134,460 was the true value at that time.

" The $3,262.80 deducted by the trust company however must be taken from the $134,460; the deed provides for that. But there is no warrant to make allowance for expenditures in procuring the aid of counsel by parties taking estates. The $12,159 cannot be deducted. Tax is owing upon $131,197.20. Interest on the amount of the tax at the rate of twelve per centum per annum from July 22, 1891, is to be added to the tax.·

" As to the parties who shall be adjudged to pay : The property in question never came into the hands of the executors nor was there any duty or authority on their part to receive it; it was not disposed of by the will. The trustee was to deliver it to the beneficiaries upon the death of Jesse Lines. It does not appear here, as it did in Wright's Ap., 38 Pa. 507, that the executors have in hand a fund belonging to the beneficiaries wherewith to pay the tax. None of the parties owing the tax ever paid it or any part thereof to the executors, neither did the latter retain anything for collateral tax on this property. Only where there has been such payment or retention or where the money or article is receivable at the hands of the executor or administrator is the latter responsible for the tax : Secs. 5 and 7 of act of 1887.

" Among the reasons advanced for a decree against the executors—William E. Lines and H. J. Meyers—is the fact that they are the obligees of the bond given upon this appeal. They are bound to ' pay all costs together with whatever tax may be fixed by said court upon said appeal.' The effect of that obligation is that if the decision is against the appellants and they fail to perform what the decree imposes, then the obligors may be resorted to. The duty of the court now is to determine the question of liability as to the tax—to declare that the appeal is not sustained, and to fix the amount owing by each of the parties whose rights came into question in this proceeding : Sec. 12, act of 1887.

" [January 9, 1893, it is adjudged and decreed that the appeal from the appraisement caused to be made by the register

be dismissed ; that there be paid to the register of wills, etc., of Northampton county by the following named parties the following named sums, that is to say, by William E. Lines three thousand two hundred and seventy-nine $\frac{93}{100}$ dollars, and by Rosanna Morris, Ziba Fairchild, Mary Jane Adams, Elizabeth Meyers, William H. Fairchild, Margaret Miller, Jesse L. Fairchild, Enos Fairchild, Edward P. Fairchild, Louis D. Fairchild, Mary E. Perkins, Eva L. Lines, Jesse T. Lines and the executor or administrator of Harriet Hill, deceased, each two hundred and thirty-four $\frac{28}{100}$ dollars, and that each pay interest upon the sum as aforesaid ordered to be paid by him or her from July 22, 1891, at the rate of twelve per cent per annum, said sums being the collateral inheritance tax owing to the commonwealth of Pennsylvania by said parties, respectively, upon the estates which they respectively took by virtue of a deed made between Jesse Lines, now deceased, and the Union Trust Company, of New York, dated May 6, 1887,—the value of the aggregate of said estates having been determined by the court to have been $131,197.29,—and further that the appellants pay the costs of this appeal and such fees as are legally taxable therein.]" [1]

*Errors assigned* were (1, 2) decree and portion of opinion as above, quoting them ; (3) in deciding that the property was subject to collateral tax ; (4) in not deciding that the value of the property when actually received by the remaindermen fixed its value for purposes of taxation ; (5) in imposing a penalty of twelve per cent ; (6) in not deducting from the value of the estate the sum of $12,159 paid for counsel fees in litigation involving the title to the property in question.

*H. J. Steele, Frederick Green* with him, for appellants.—This estate is not taxable under the laws of Pennsylvania : Lines v. Lines, 142 Pa. 149; Laws of New York, 1887, c. 713; act of April 7, 1826, Purd. 259 ; act of March 11, 1850, Purd. 261 ; act of 1887, P. L. 79 ; Small's Est., 151 Pa. 1 ; Com'lth's Ap., 127 Pa. 435 ; Del Bustos' Est., 23 W. N. 111 ; Bittinger's Est., 129 Pa. 338 ; Orcutt's Ap., 97 Pa. 179.

The taxing power rests upon the reciprocal duties of protection and support between the state and the citizens, and the

exclusive sovereignty and jurisdiction of the state over the persons and property within its territory : McCullough v. Maryland, 4 Wheat. 316 ; Pittsburgh, Fort Wayne & Chicago Ry. v. Com., 66 Pa. 73; Dos Passos, Col. In. Tax, 20 ; Reish v. Com., 106 Pa. 521 ; Com. v. Standard Oil Co., 101 Pa. 146.

The legal title to the fund in question was in the Union Trust Company, of New York, and the fund was distributed to the beneficiaries in the city of New York.   Our statute does not purport to tax collateral inheritance acquired under the laws of other states and brought by the beneficiaries into this state : Drayton's Ap., 61 Pa. 172.

Property is taxable by the states as against the trustee at his place of residence, where the cestuis que trust are nonresidents : People v. Albany, 40 N. Y. 154 ; Latrobe v. Baltimore, 19 Md. 13 ; Catlin v. Hull, 21 Vt. 152 ; Dorr v. Boston, 6 Gray, 131.

Property of a nonresident decedent actually located in a foreign state is subject to the payment of collateral inheritance tax in such foreign jurisdiction : Alvany v. Powell, 2 Jones' Eq. (N. C.) 51 ; State v. Dalrymple, 70 Md. 294 ; Romaine's Case, 127 N. Y. 80 ; Small's Est., 151 Pa. 1.

In Com. v. Smith, 5 Pa. 143, it was held that under the act of 1826 it was not the person but the estate within this commonwealth on which the tax was levied.

Shortly after the passage of the act of 1850, it was decided in Short's Est., 16 Pa. 63, that personalty of a citizen of Pennsylvania, derived from either within or without the state, was liable to the tax.

The act of 1850 extends to all persons who have been or may now be domiciled in the state.   The words "have been" of course refer to the past, but the words "may now be domiciled" can refer only to the present : Clark v. Lord, 20 Kansas, 390 ; Bank v. New London, 20 Conn. 115 ; Sedgwick, Stat. 205 ; Pittsburgh v. Kalchtholer, 114 Pa. 552.

The tax laws are to be construed most strictly against the government and most favorably to the taxpayer, and a citizen cannot be subjected to such special burdens without clear warrant of law : Dos Passos, Col. In. Tax, 41 ; Dwarris, Stat. 742 ; Euston's Case, 113 N. Y. 174 ; Stewart's Case, 131 N. Y. 282 ; Hoyt v. Com'rs, 23 N. Y. 224 ; Story, Conf. L. 550.   In invoking the maxim that personal property follows the domicile of

the owner, the court below ignored the fact that the decedent was not the owner of this property at the time of his death.

This deed of trust gave the beneficiaries an interest in remainder which vested immediately on the execution and delivery of the deed. And this would also be true under the laws of New York: Van Cott v. Prentice, 104 N. Y. 45; Martin v. Funk, 75 N. Y. 134; Loftus v. Bank, 133 Pa. 112; Hullin v. Faure, 15 La. 622.

It may be contended that the deed of trust in controversy is testamentary. If it be true, as already decided by this court, that this deed is a New York contract, then it is manifestly a question for the courts of New York: Dent's Ap., 22 Pa. 514.

The deed was not testamentary: McBride v. Smyth, 54 Pa. 245; Doe v. Considine, 6 Wall. 475; Minnig v. Batdorff, 5 Pa. 506; Blanchard v. Blanchard, 1 Allen, 223; Penna. Company's Ap., 109 Pa. 489.

*W. S. Kirkpatrick, Frank Reeder* with him, for appellee.— The act of 1887 is a compilation of the former acts, and is declaratory of the laws as then already existing and ascertained by a succession of statutes and judicial decisions thereunder: Del Busto's Est., 23 W. N. 111; Small's Est., 151 Pa. 1.

It is not necessary that both person and property should be within the jurisdiction in order to be taxable; it is sufficient if either is. If a person is domiciled within the state his personal property, in contemplation of law, has its situs there also, and he may be taxed in respect of it at the place of his domicile. So, at the option of the state, it may impose taxes on tangible personal property within the state, irrespective of the residence or allegiance of the owner: Cooley on Taxation, 2d ed. 55; Dos Passos, Col. In. Tax, 76.

Debts, mortgages, railroad bonds, certificates of stock, etc., are intangible personal property, and as such taxable at the domicile of the owner and not where the evidence of the debt may be found, or the debtor may happen to reside: Kirtland v. Hotchkiss, 100 U. S. 498; Standard Oil Co. v. Com., 101 Pa. 146; Orcutt's Ap., 97 Pa. 179; Kintzing v. Hutchinson, 7 W. N. 226; McKean v. Northampton Co., 49 Pa. 519.

As to intangible personal property, the law of the domicile is applied in Pennsylvania, even if it is in the hands of an agent

or a trust company, in the state, and this rule has been followed in Pennsylvania as to bonds and stock issued under the laws of this state, and actually within the state when they belonged to a nonresident owner: Com'lth's Ap., 11 W. N. 492; Small's Est., 151 Pa. 1.

The present case is not a case of tangible property having its actual locality outside of the state, and a claim to tax it or its transfer because of the fact of the residence of the owner here.

The present claim does not involve a discussion of the terms of the act of 1850, our contention being that the property is intangible and had its legal situs in Pennsylvania.

All transfers or deeds which by their terms in the light of surrounding circumstances leave the property for the use, enjoyment, or benefit of the grantor during his life, and all transfers or deeds, no matter what their terms may be, which are intended as a contrivance to accomplish that purpose, leave the property still subject to the tax as the estate of such grantor. The fact that the grantor does not let go is what makes it, in the eye of the law, remain his property for the purposes of the tax : Reish, Adm'r, v. Com., 106 Pa. 521; DuBois's Ap., 121 Pa. 368.

The case of Lines v. Lines, 142 Pa. 149, can have no application here ; nor does it decide the essential question in the present case as to the Union Trust Company deed. It simply declares that the deed, being a New York contract, and the trustee being a New York corporation, the court of common pleas of Northampton county, in equity, had no jurisdiction of the trust.

A trust is not invalid but will be enforced where such trust was created to defeat the collateral inheritance tax ; and even although such trust may be a secret one, the fund, however, being liable to the tax : Tritt v. Crotzer, 13 Pa. 451; Baker v. Williamson, 4 Pa. 456.

The deed to the Union Trust Company is really a testamentary paper, and for that reason the property passing thereby is taxable at the domicile of the maker of the instrument: Lines v. Lines, 142 Pa. 149; Frederick's Ap., 52 Pa. 338; Rick's Ap., 105 Pa. 528 ; Moore v. Smith, 9 W. 407 ; Mergenthaler's Ap., 15 W. N. 441; McBride v. Smyth, 54 Pa. 245 ; Cannon's Est., 16 W. N. 544; Gingrich's Ap., 1 Mona. 301.

The tax is imposed on what remains for distribution after expenses of administration, debts, and rightful claims of third parties are paid or provided for: Orcutt's Ap., 97 Pa. 179. The expenses of counsel in litigation among persons claiming as distributees of the decedent's estate cannot be considered expenses of administration, or as debts or as rightful claims of third parties against the decedent or his estate.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 22, 1893:

On July 22, 1890, Jesse Lines died in the city of Easton, Pennsylvania, where he had resided for over thirty years prior thereto. While on a visit to New York, in May, 1887, he executed and delivered to the Union Trust Company, a corporation organized under the laws of New York and doing business in that state, a deed of trust of one hundred and eighteen mortgage bonds, of $1,000 each, issued by a Missouri railroad corporation, and two hundred and eighty-one shares capital stock of the Taylor Iron Works, a New Jersey corporation, doing business therein. These securities were then delivered and, on the books of the respective corporations, transferred to "The Union Trust Company of New York, in trust for Jesse Lines and others." According to the provisions of the deed, said trustee was to hold the securities, collect the interest and income thereof and pay the same to the said Jesse Lines during his natural life, and, upon his decease, to divide said bonds and stock and transfer one half thereof to certain of his nephews and nieces and the residue to his putative son, as specified in said trust. The trust deed contains a clause in which the said Jesse Lines, as first party thereto, reserves to himself "the right and power, by an instrument in writing to be delivered to the second party, to alter, change, modify or revoke all disposition and direction as to transfer and dispositions made and to be made of said property after the decease of first party." But it does not appear that the right thus reserved was ever exercised. The trustee collected and paid over to Mr. Lines the income of the trust securities during his life, and after his decease divided and distributed the corpus of the trust, consisting of said securities, etc., to the beneficiaries entitled thereto, according to the provisions of the deed.

At the time said trust was created and thence until his de-

cease, Mr. Lines was a citizen of Pennsylvania, domiciled therein at the city of Easton. During same time he had a wife who survived him and died. But neither then nor at the time of his decease had he any child or children born in lawful wedlock, nor any descendant of any such child or children, nor father or mother.

This proceeding was instituted by the register of wills of Northampton county for the purpose of enforcing payment of collateral inheritance tax, under the law of this state, on the bonds and stock of which Mr. Lines was the beneficial owner up to the time of his death, and which, upon that event, passed to said beneficiaries by virtue of said trust, which, as to them, was intended to and did take effect, in enjoyment, immediately after his decease, and not before. It was admitted that none of the beneficiaries under said deed resided in the state of New York at the date of its execution, nor at any time since, except Jesse T. Lines, who, for a short time subsequent to the death of Jesse Lines, resided in Brooklyn, New York; all said beneficiaries lived in Pennsylvania, except Mary E. Perkins, Harriet Hill and Eva E. Lines, who, at the time said trust was created and at the date of Jesse Lines's death, lived in the state of Minnesota. There were no debts owing by the decedent to any person in the state of New York, and no ancillary administration in that state; nor was there any collateral inheritance or succession tax paid upon the estate of Jesse Lines, or any part thereof, in that state, nor any such return charged against the same or paid to authorities of said state upon any property mentioned in or distributed under said trust deed. The securities which were distributed to the beneficiaries were appraised at over $130,000.

The appeal from valuation fixed by the register's appraiser was heard and disposed of by the learned president of the 31st district, who, after fully stating all the material facts, including those outlined above, and exhaustively considering the questions of law arising thereon, held that the securities referred to were subject to collateral inheritance tax in the hands of said beneficiaries; and he accordingly dismissed the appeal and entered the decree from which this appeal was taken.

In view of the undisputed facts, it is strange that any question should have been seriously raised, either as to the right of

the commonwealth to the tax on the securities, or the liability of the beneficiaries to pay their respective proportions thereof. Mr. Lines was not only the beneficial owner of the securities prior to and at the time of his decease, but under the reserved power of modification, revocation, etc., he had absolute control of the disposition to be made of the securities upon his decease. At any time prior thereto, he could have modified or revoked the trust in favor of the beneficiaries named in the deed. It is true the legal title to the securities was in the Trust Company, but aside from mere compensation for its services, as custodian of the property, the company had no beneficial interest therein. In any proper sense of the term, the securities were the personal property of Mr. Lines. They were his to enjoy during his life-time, and his to dispose of, in any manner he saw fit, at any time prior to his decease. He chose to leave the trust in favor of the beneficiaries unaltered and unrevoked, and, as he intend-ed, it took effect, in enjoyment, immediately after his decease. Moreover, the securities were that kind of personal property, the situs of which follows the owner. As was said in Orcutt's Appeal, 97 Pa. 179, the general rule is that the situs of personal property follows the owner, but for particular purposes some species of personalty may have a situs distinct from the legal one, but that in question is not within any of the recognized exceptions to the general rule. That was clearly shown by the learned judge who presided specially at the hearing in the court below, as may be seen by reference to his clear and con-vincing opinion. The manifest purpose of our collateral in-heritance tax law is to subject property, limited by deed in the manner stated in the statute, to taxation, because it is still sub-stantially the property of the grantor, and does not actually pass, nor is it intended to pass to the collateral beneficiaries until his death, and hence it is essentially similar in that respect to a devolution of property by testacy or intestacy upon the death of the owner. That is illustrated by several of our cases, among which are Reish v. Commonwealth, 106 Pa. 521; Sei-berts's Appeal, 110 Pa. 329; DuBois's Appeal, 121 Pa. 386. In the former it was held that the right of the commonwealth to the tax was not defeated by a conveyance or transfer of title to the property during the lifetime of the owner, nor by pos-session taken under such conveyance, if the enjoyment of the

property conveyed is not intended to take effect until the death of the grantor. In DuBois's Appeal, supra, speaking of the deed made by the grantor and possession taken by the grantee thereunder, etc., it is said: "The naked legal title acquired by the grantee was the merest shadow. The grantor held a firm grasp on the entire substance, and he retained it as long as he lived. In view of all this, it is idle to contend that, in any proper or statutory sense of the word 'enjoyment,' the conveyance in question took effect or was intended to take effect in enjoyment prior to the death of John DuBois."

It follows from what has been said that the conclusions reached by the court below on all the controlling questions in the case are correct, and the decree based upon the principles thus established should not be disturbed.

The learned judge was clearly correct in saying, as recited in the second specification: "It must be regarded that Jesse Lines, not the Trust Company, owned the stocks and bonds. Beyond a doubt, the situs of the property for the purpose of taxation, including the imposition of collateral inheritance tax, was in Pennsylvania." There appears to be no error in either of the matters referred to in the remaining specifications. In view of what has been already said in the opinion of the court below and here, neither of them requires special consideration.

Decree affirmed and appeal dismissed, with costs to be paid by appellants.