MURRY GUGGENHEIM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43698.    Promulgated December 18, 1931.

*George E. Cleary, Esq.*, for the petitioner.
*Frank T. Horner, Esq.*, for the respondent.

OPINION.

ARUNDELL: In 1925 the petitioner relinquished his power of revocation of two trusts established in 1917. This act is held by respondent to constitute a gift within the meaning of the gift-tax provisions of the Revenue Act of 1924, and he has asserted a deficiency in gift tax in the amount of $2,465,681.20.

A lengthy stipulation of facts was filed which is incorporated herein by reference as our findings of fact. A brief summary of the facts will suffice for the purposes of understanding and deciding the case.

The petitioner, at all times material hereto, has resided in New York, N. Y., and thus has been a resident of the United States. On June 28, 1917, he established two trusts in New Jersey; one for the benefit of his only son, Edmund, and the other for the benefit of his only daughter, Lucile G. Gimbel. An individual and a trust company were the original trustees. The trusts were to continue for ten years unless sooner terminated. A substantial amount was to be paid annually to the beneficiary of each trust and at the end of the ten-year period the principal of each trust was to be paid to the beneficiary, free of all restrictions.

There were provisions for the children of a beneficiary in case the beneficiary died within the ten-year period, and, in the event of the death of a beneficiary without surviving children, then the petitioner was to receive the principal and accumulations.

The petitioner retained the right to alter or revoke each trust except as to income received or accrued, and to direct the making of all changes in the securities included in the trust property. Subject to the petitioner's approval, the trustees were authorized to do all things necessary in connection with the trust property. The trustees were given the custody of the trust funds and all securities were listed in their names or in the names of their nominees.

Various changes in the trust agreements were made from time to time. For example, in 1921 the petitioner gave to two individuals the power, formerly reserved to himself, of directing and approving the management of the trusts.

On July 13, 1925, the final change in the trusts was made, whereby the petitioner relinquished his power to alter, modify, or revoke the trusts.

The corporate trustee continued throughout the period, but there were changes in the individual trustees. The petitioner was never a trustee.

The petitioner delivered to the trustees the securities constituting the corpus of the trust on June 28, 1917, and the trustees have held all securities of the trust since that date. The trustees have collected all income and profits of the trust and have distributed a substantial part thereof to the two beneficiaries, as provided by the agreements. The petitioner has never received any income of the trusts nor had any of such income expended for his benefit. He substituted some securities for others in 1918 for the last time. As securities were delivered by the petitioner to the trustees, such items were eliminated from his accounts. He never used the trusts for personal loans or for personal credit in any way. The value of his separate property has at all times greatly exceeded the value of the trust property.

After May 5, 1921, he never exercised any rights of management or control over the trust property.

The corporate trustee was a regular trust company, doing other business. The petitioner was not interested in it financially.

The petitioner, his wife, and their two children were all living and of age during the period 1917 to 1925, inclusive.

The fair market value on July 13, 1925, of the securities constituting the corpus of these two trusts was $13,110,463.44, including $116,548.72 representing accrued interest not received and dividends declared but not received. The respondent agrees to eliminate the latter amount from the amount subject to gift tax.

The respondent has asserted the tax under section 319 of the Revenue Act of 1924, which, as far as material here, provides for the imposition of a tax:

For the calendar year 1924 and the calendar year 1925 * * * upon the *transfer* by a resident *by gift* during such calendar year of any property wherever situated, whether made directly or indirectly * * *. [Italics supplied.]

This statute, as applied to gifts made after its enactment, has been held valid in *Bromley* v. *McCaughn*, 280 U. S. 124, but invalid as to gifts made prior to June 2, 1924. *Untermeyer* v. *Anderson*, 276 U. S. 440.

The question here is whether the value of the corpus of the two trusts may be used as the measure of the gift tax asserted on the ground that the "transfer * * * by gift" occurred in 1925 when the settlor relinquished his reserved power to alter, amend, or revoke the trusts which were created in 1917, prior to the enactment of the statute imposing the gift tax. We think it must be conceded that the term "gift" as used in the statute merely designates the transfers selected for tax, i. e., only such transfers as are donative in character have been selected. The term designates the character of the transfer rather than the medium used in effecting it. The parties assume that "transfer by gift" as used in the statute includes all trusts created after the passage of the Act, and there can be no doubt of this if the statute is not to be completely nullified by so ready a means of evasion. Thus the tax is imposed upon transfers made "directly or indirectly." The fact that section 319 is broad enough to include the creation of a trust, donative in character, also finds support in subdivisions (a) (2) and (b) (1) of section 321, which allow certain deductions in computing the amount of the gifts subject to the tax imposed by section 319. Both of these subdivisions mention and allow the deduction of gifts made "to or for the use of" various corporations for political or charitable purposes and gifts made "to a trustee or trustees" for similar purposes. But counsel for the petitioner suggests that every essential thing was done in 1917 when the trusts were created. The property was then transferred to a corporate trustee and provision was made that all or some part of the income should go to petitioner's children, merely the right being reserved to alter, amend or revoke the trusts, and it is said that the surrender in 1925 of this reserved right surely can not constitute a transfer within the meaning of the gift tax statute. But this reserved right which was relinquished in 1925 was the absolute right to control the corpus and the income of the two trusts. At a word from petitioner he was reinvested with the full and complete ownership of the corpus and the income and earnings therefrom on and after the date he might take such action. The rights of the children were complete only as far as income paid and accrued prior to the time petitioner exercised his reserved right to alter, amend or revoke the trusts. This reserved power may be, as petitioner says, the mere

right to revoke, but it is the essence of ownership and control. Prior to 1925, when petitioner relinquished the right of revocation, the property, was his, not his children's, and he alone could have withdrawn every right they had without legal redress on their part. That a gift by a deed of trust, in which the right of revocation is reserved to the grantor, does not become effective until the termination of the right, is held in numerous decided cases. See *In re Hanna's Estate*, 195 N. Y. S. 749; *In re Schmidlapp's Estate*, 196 N. Y. S. 108, citing *Lines Estate*, 155 Pa. 378; 26 Atl. 728; *Matter of Bullen*, 143 Wis. 512; 128 N. W. 109; *Blodgett* v. *Union & New Haven Trust Co.*, 97 Conn. 405; 116 Atl. 909; *Crocker* v. *Shaw*, 174 Mass. 266; 54 N. E. 549.

This tax, like the estate tax, is on the " transfer " of property. In *Chase National Bank* v. *United States*, 278 U. S. 327, involving insurance policies, it was held that the transfer was uncompleted until the insured's right to change the beneficiaries was terminated. The court said:

Such an outstanding power residing exclusively in a donor to recall a gift after it is made is a limitation on the gift which made it incomplete as to the donor as well as to the donee, and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers.

The quoted language is particularly significant when it is recalled that the Revenue Act of 1921 under which the *Chase National Bank* case was decided does not in terms purport to tax transfers or trusts in which the donor retains the power of alteration as do the later revenue acts. See section 303 (d), Revenue Acts of 1924 and 1926. And the same reasoning was applied in *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, in holding that the estate tax applied to the revocable trusts involved, the court saying: " a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death."

In *Means* v. *United States*, 39 Fed. (2d) 748; certiorari denied, 282 U. S. 849, the Court of Claims had facts on all fours with the present case and sustained the imposition of the tax, citing as authority *Saltonstall* v. *Saltonstall*, 276 U. S. 260; and *Reinecke* v. *Northern Trust Co.* and *Chase National Bank* v. *United States, supra*. In its opinion the Court of Claims said that the Supreme Court in the cases relied on determined the precise question of the effective date " of the transfer of property where the donor in trust instruments had reserved to himself the unrestricted rights of revocation." The petitioner contends that the Court of Claims misapprehended the scope of the Supreme Court decisions. It is argued that the cases cited are not controlling as the Supreme Court was considering them solely from the standpoint of the constitutional power of Congress

to tax as transfers the termination of reserved powers to alter the instruments there involved. It is true that in the cited cases constitutional questions were presented to the court. But in each case the decision turned upon the question of whether the termination of a power *after* the enactment of the taxing act constituted a transfer within the meaning of the act.

This is distinctly brought out in the *Northern Trust Co.* case, in which the settlor of two revocable trusts created in 1903 and 1910 died in 1922, while the Revenue Act of 1921 was in effect. At the time this case was under consideration *Nichols* v. *Coolidge*, 274 U. S. 531, had already held that the 1918 Act was invalid in so far as it attempted to tax " transfers *completed* before any such statute was enacted," and it was contended that the two trusts came within that rule. But the court held otherwise, on the ground that the reserved power in the settlor alone prevented the transfers from being complete until such power was terminated. The opinion reads in part:

> But in No. 77, *Chase National Bank* v. *United States*, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. ——, decided this day, the decision is rested on the ground, earlier suggested with respect to the Fourteenth Amendment in *Saltonstall* v. *Saltonstall*, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565, that a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death. Hence section 402, as applied to the present transfers, is not retroactive since his death follows the passage of the statute. For that reason, stated more at length in our opinion in *Chase National Bank* v. *United States, supra*, we hold that the tax was rightly imposed on the transfers of the corpus of the two trusts * * *.

In the *Chase National Bank* case the court states the question before it in this way:

> The precise question presented is whether the termination at death of that power [to change the beneficiary] and the consequent passing to the designated beneficiaries of all the rights under the policies freed of the possibility of its exercise may be the legitimate subject of a transfer tax, as is true of the termination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled.

In deciding the question the court held in part:

> *A power in the decedent* to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life * * * is by no means the least substantial of the legal incidents of ownership, *and its termination at his death,* so as to free the beneficiaries of the policy from the possibility of its exercise *would seem to be no less a transfer* within the reach of the taxing power *than a transfer effected in other ways through death.* [Italics supplied.]

This case is strikingly parallel to the *Northern Trust Co.* case in so far as the so-called " two trusts " were involved. In that case the decedent had created two trusts, reserving to himself alone the power of revocation, and died in 1922 without having exercised the powers.

The estate-tax statute imposed a tax "upon the transfer of the net estate" and provided for the inclusion in the estate of all property "to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust * * * intended to take effect in possession or enjoyment at or after his death * * *." In the instant case the taxpayer created trusts in 1917 wherein he reserved to himself alone the power to alter, amend, or revoke, and terminated that power in 1925 by relinquishing it. The applicable statute here taxes " the transfer * * * by gift * * * of any property * * * whether made directly or indirectly * * *." If in the one case the termination of the power of revocation constituted a completed and taxable transfer, it seems to us that it does so in the other. We are accordingly of the opinion that the court of claims correctly construed the statute in the *Means* case and properly applied the reasoning of the supreme court in the cases cited by it.

The gift-tax act was designed primarily to prevent evasion of the estate-tax act and the surtax provisions of the income-tax laws. In introducing the gift-tax provisions on the floor of the House the then Chairman of the Ways and Means Committee stated [Congressional Record, 68th Cong., 1st sess., vol. 65, part 3, pp. 3119 and 3220]: " The gift tax is a corollary to the estate tax. It is perfectly idle to attempt to raise the estate tax as we have done today, and make no provision with reference to gifts. The estate tax at the present time is being largely evaded by the splitting up of the large estates * * *." See also Congressional Record, vol. 65, part 4, pp. 3172, 3173; part 8, p. 8095, and dissenting opinion by Justice Brandeis in *Untermeyer* v. *Anderson, supra.*

In view of the purpose for which the statute was enacted, and its language like that of the estate-tax provisions in taxing the " transfer " of property, it is our opinion that it should be construed in harmony with the construction placed on the estate-tax statute, and if this is done it follows inevitably that the transfer by means of trusts donative in character is not complete until the power of revocation is terminated.

The construction we place on the statute is the same as that of the respondent in Regulations 67, article 1, reading in part:

The creation of a trust, where the grantor retains the power to revest in himself title to the corpus of the trust, does not constitute a gift subject to tax, but the annual income of the trust which is paid over to the beneficiaries shall be treated as a taxable gift for the year in which so paid. Where the power retained by the grantor to revest in himself title to the corpus is not exercised a taxable transfer will be treated as taking place in the year in which such power is terminated.

We think it is not without significance that while Congress amended the gift-tax sections of the 1924 Act as to rates by sections

324 and 325 of the Revenue Act of 1926, no change was made in the imposing section which prior thereto had been construed by the respondent as above set out.

In conclusion, it is our opinion that the transfers of property by means of the trusts herein were transfers by gift within the meaning of the statute; that the transfers were not completed until the settlor relinquished his power of revocation in 1925; and that the *Means* case correctly interpreted the statute and should be followed in this proceeding.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

McMAHON, concurring: The correct result has been reached in this proceeding.

A gift has been defined as follows:

The general rule deductible from the many and more or less variant statements found in the decisions is that to constitute a valid gift inter vivos there must be a donor competent to make it; freedom of will on his part; as intention on his part to make it, a donee capable of taking the gift; the gift must be complete and nothing left undone; the property must be delivered by the donor; and accepted by the donee; the gift must go into immediate and absolute effect; the gift must be gratuitous; *the gift must be irrevocable.* 28 C. J. 626. [Italics ours.]

See *Copland* v. *Commissioner*, 41 Fed. (2d) 501, 504, and *Lee* v. *Lee*, 5 Fed. (2d) 768.

Applying all these tests, there was a gift of the corpus of the two trusts. The real question is as to when this gift was made, whether in 1925 or previous thereto.

In the instant proceeding there were present all of the elements pointed out in these authorities essential to the making of a gift, of the corpus of the trusts, when, on July 13, 1925, the grantor relinquished his power to *alter, modify* or *revoke* the trusts. The transfer of the corpus of the trust was then and thereby completed. This relinquishment of this power was the final step of the grantor in the completion of the making of the gift. There was nothing further necessary, or that he could do, to complete the gift. There was nothing that he could thereafter do to defeat the gift. There was no completed gift of the corpus of the trusts previous to July 13, 1925. On that date the gift of the corpus of the trusts became effective immediately, upon the relinquishment by the grantor of his right to alter, modify or revoke the trusts.

There is no good reason why the making of a gift inter vivos can not be accomplished by a series of acts on the part of the grantor extending over a period of time; or, in other words, why all of them

must occur simultaneously. Cf. *Continental Life Ins. Co.* v. *Sailor*, 47 Fed. (2d) 911.

In the instant proceeding we have a series of acts on the part of the grantor which commenced with the creation of the trusts on June 28, 1917, and culminated in his relinquishment of his power of alteration, modification and revocation, on July 13, 1925, resulting in the making of a gift, all in conformity with a carefully formed intention on his part so to do, which intention is clearly reflected by his conduct consisting of these various acts.

Upon the foregoing authorities, construed in the light of what occurred here, the gift of the corpus of the trusts was completed on July 13, 1925.

Section 319 of the Revenue Act of 1924, as amended by section 324 of the Revenue Act of 1926, imposes a tax on a " *transfer* by a resident by *gift* * * * of *any* property wherever situated, whether directly or *indirectly*." There is no ambiguity in this phraseology as applied to the facts in the instant proceeding. Regulations 67, article 1, promulgated by the Commissioner of Internal Revenue, as applied to these facts, are in harmony with the provisions of the statute and a correct interpretation of it. The gift in issue in this proceeding is clearly taxable under the statute.

---

MURDOCK, dissenting: The Commissioner has held the petitioner liable for a gift tax on the theory that on July 13, 1925, the petitioner made a transfer by gift of the then corpus of the two trusts, because on that date he relinquished his retained power of revocation. The Court of Claims sustained the Commissioner in a parallel case. *Means* v. *United States*, 39 Fed. (2d) 748; certiorari denied, 282 U. S. 849. Now the Board, employing and approving the reasoning of the Court of Claims in the *Means* case, again sustains the Commissioner. The Board and the Court of Claims rely upon *Saltonstall* v. *Saltonstall*, 276 U. S. 260; *Chase National Bank* v. *United States*, 278 U. S. 327, and *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, and the reasoning of the Supreme Court in deciding those cases. In my opinion the Board and the Court of Claims have not given due consideration to the fact that the solution of the only question presented in these cases depends upon a proper interpretation of the statutes to see whether or not the gift-tax provisions impose a tax under the facts.

In the three Supreme Court cases relied upon, the court took occasion to point out in each that there was no question of statutory construction, and a constitutional question only was involved.

In *Saltonstall* v. *Saltonstall*, *supra*, the Supreme Court accepted the state court's interpretation that a tax had been clearly imposed

and it considered only the right of the legislative branch of the state government to impose such a tax. It held that a reserved power of appointment left the transfer incomplete and subject to tax.

In *Reinecke* v. *Northern Trust Co.*, *supra*, there were seven trusts involved, which the court divided into two groups; one of two trusts, and the other of five. The decision of the court in regard to the two trusts is relied upon in the prevailing opinion of the Board. Section 401 of the Revenue Act of 1921 imposed a tax upon the transfer of the net estate. Section 402 (c) provided that there should be included in the gross estate all property " to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust * * * intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act)." The two trusts had been created before the passage of any statute imposing an estate tax. In these two trusts the settlor had reserved to himself the income for life and on his death the income of each was to be paid to a designated person until the termination of the trust, with remainders over. The settlor reserved to himself alone a power of revocation of the trusts. The only question which the Supreme Court considered was whether or not the taxing statute, if applied to these two trusts, was unconstitutional and void, because retroactive, within the ruling of *Nichols* v. *Coolidge*, 274 U. S. 531, in which it had held that a similar section of the 1918 Act was retroactive and unconstitutional as applied to transfers completed by the creation of trusts prior to the enactment of any such taxing statute. The court held:

A transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death. Hence section 402, as applied to the present transfers, is not retroactive since his death follows the passage of the statute. For that reason stated more at length in our opinion in *Chase National Bank* v. *United States, supra*, we hold that the tax was rightly imposed on the transfers of the corpus of the two trusts * * *.

The court considered that these two trusts were intended to take effect in possession or enjoyment at or after the decedent's death and thus they were covered by a specific provision of the statute. The only question was whether this provision could be constitutionally applied to trusts of this kind.

In the *Chase National Bank* case the only question involved was the constitutionality of section 401 as supplemented by that part of section 402 (f) of the Revenue Act of 1921 which provided that the value of the gross estate should include all property " to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." Section 401 imposed a tax upon the

transfer of the net estate of every decedent. The Supreme Court said:

The tax is plainly imposed by the explicit language of sections 401 and 402 (f) if those sections are constitutionally applied.

\* \* \* \* \* \* \*

The precise question presented is whether the termination at death of that power and the consequent passing to the designated beneficiaries of all rights under the policies freed of the possibility of its exercise *may be* the legitimate subject of a transfer tax \* \* \*. [Italics supplied.]

In that case the decedent had taken out several insurance policies on his own life, aggregating $200,000. In each he named his wife as beneficiary, but reserved to himself the right to change the beneficiary. He made no change up to the date of his death. The court held:

Such an outstanding power residing exclusively in a donor *to recall a gift after it is made* is a limitation on the gift which makes it incomplete as to the donor as well as to the donee, and we think that the termination of such a power at death *may* also *be* the appropriate subject of a tax upon transfers. [Italics supplied.]

Thus it appears that in each of these cases there were specific provisions clearly imposing the tax and the only question was whether these provisions were constitutional. Here the question is quite different. There is no express provision which clearly covers the present situation, and we are asked to hold that the general provision is sufficient. Cf. *Tyler* v. *United States*, 281 U. S. 497. If in the last two cases section 401 had stood alone without the specific provisions of section 402, a question like ours could have been raised. But section 401 did not stand alone and this question was never presented to the Supreme Court. In my opinion we can not decide the question of statutory interpretation here presented on authority of these decisions of the Supreme Court on a totally different question.

But it is argued that the reasoning of the Supreme Court in these three cases is decisive of the present controversy. I do not think so. It was only necessary for the Supreme Court to hold in each that the transfer was not complete until the termination of the power of revocation. The specific provisions were therefore not unconstitutional. Anything further which the court may have said was *dicta* which it is free to disregard if it ever has to decide the present case.

The petitioner is willing to concede that Congress had the power to impose a tax which would apply to a case such as this one. But the principal question which he raises is, Has Congress done so? He claims that there is at least doubt whether the words used should be interpreted as covering the present situation.

In section 319 of the Revenue Act of 1924, as amended by section 324 of the Revenue Act of 1926, a tax was " imposed upon the trans-

fer by a resident by gift during such calendar year of any property wherever situated, whether made directly or indirectly." The act further provided that the amount of the gift to be taxed would be the fair market value of the property at the date of the gift. That the act taxes some transfers which occur through the medium of trusts must be conceded, in view of the provisions of subdivisions (a) (2) and (b) (1) of section 321. I will concede, for the sake of argument, that the logical time to tax a transfer such as was made here would be at the termination of the power. See, however, section 322. The petitioner assumes that "transfer by gift" as used in these acts includes trusts created after the passage of the Revenue Act of 1924. But, he argues, it should not be applied where, as here, a trust was created prior to the passage of the Revenue Act of 1924 and the only thing that happened thereafter was the termination of a power to alter, amend, or revoke by voluntary relinquishment. He reasons that Congress had in mind "relinquishment of powers to revoke trusts" and distinguished such relinquishments from transfers by gift by providing for both where it so intended; in the estate-tax title of the Revenue Act of 1924 there appeared a new provision specifically including in the gross estate the value of property with respect to which the decedent had created a trust and reserved any power to himself to alter, amend, or revoke (section 302 (c)); no such elaboration appears in the gift-tax provision; if necessary in one place, it is necessary in the other (see also sections 402 (c) of the Revenue Acts of 1918 and 1921 and section 302 (c) of the Revenue Act of 1924, in all of which transfers, on the one hand, and creations of trusts on the other, are separately provided for); when the statute is read as a whole and the language of various sections is compared, it is clear that Congress did not intend the gift-tax provision to cover a case where in the year in question there was only a relinquishment of a power to alter, amend, or revoke a trust theretofore created; and, futhermore, since the relinquishment of the power to alter, amend or revoke a trust is not ordinarily regarded as a transfer of property by gift, the language of the statute must be clear if such an act is to be within the scope of the gift tax (cf. section 219 (g) of the Revenue Act of 1924). The Commissioner has failed to reply to these arguments of the petitioner, and the Board fails to dispose of them adequately. I think they have considerable persuasive force. Cf. *Reinecke* v. *Gardner*, 277 U. S. 239.

Mr. Justice Holmes, in speaking for one-half of the court in regard to the same provisions which we are here considering, said "The Act should be read as referring only to transactions taking place after it was passed * * *." *Blodgett* v. *Holden*, 275 U. S. 142. The creation of this trust was a transaction which took place prior to the passage of the Act. The trust was valid even though the creator

retained the power to alter, amend or revoke it. *Stone* v. *Hackett*, 12 Gray 227; *Farmers' Loan & Trust Co.* v. *Bowers*, 29 Fed. (2d) 14; *Hibbard, Spencer, Bartlett & Co.*, 5 B. T. A. 464. "The right to revoke, unexercised, is a dead thing. Its presence in a deed does not alter the character of the instrument or estate granted." *In re Dolan's Estate*, 279 Pa. 582. Power of revocation does not affect the legal title to the property. After the relinquishment of this power the trust was no more effective than formerly. Cf. *J. T. Fargason*, 21 B. T. A. 1032. Here the grantor did not retain the income to himself for life as in the *Saltonstall* and *Reinecke* cases, *supra*. The Act taxes a "transfer" "by gift" "of any property." The relinquishment affected no physical transfer, no change in possession, and no change in the legal or equitable title to the trust *res*. The holder of the power was not technically the owner of the trust property at the time he relinquished the power. The power itself "is not a property right nor an interest in property." *Farmers' Loan & Trust Co.* v. *Bowers, supra*. Cf. *Jones* v. *Clifton*, 101 U. S. 225. Technically, the relinquishment did not transfer but rather extinguished something. Cf. *In re Hall's Estate*, 99 N. J. L. 1; affd., 100 N. J. 405. Thereafter, that which had vested could never be divested, the gift could no longer be recalled. Here only one thing happened after the passage of the Act, the relinquishment of the power. It was at most but the final step of the grantor. Alone and separated from the steps previously taken it certainly did not transfer anything. It merely completed the shifting of the economic benefits which had been at least partially accomplished prior to 1924. If the Act be held to impose a tax upon such a transaction, it must be read as referring not only to that part of the transaction which took place after it was passed (the relinquishment), but also to that part which took place before it was passed (the creation of the trust). But the Act applies only to transfers made during the taxable year.

Tax provisions must be strictly construed, and if there be doubt as to a proper construction, that doubt must be resolved in favor of the taxpayer. *Gould* v. *Gould*, 245 U. S. 151; *United States* v. *Merriam*, 263 U. S. 179; *Reinecke* v. *Northern Trust Co., supra*. The language used must be reasonably construed, but may not be extended by implication or otherwise. *Smietanka* v. *First Trust & Savings Bank*, 257 U. S. 602. The statute should be read as a whole. *Hellmich* v. *Hellman*, 276 U. S. 233. Vague or doubtful interpretations may never serve to impose a duty upon a citizen, but clear and express words are required for that purpose. *Isham* v. *United States*, 17 Wall. 496; *Hartranft* v. *Wiegmann*, 121 U. S. 609. Not only could Congress have easily expressed more clearly an intention to tax upon the termination of a power to revoke, but when it has had such an

intention it has usually expressed it more clearly. Notwithstanding the administrative construction adopted by the Treasury Department, I think that there is at least doubt as to whether the gift-tax provisions, strictly construed and giving to the words used their ordinary meaning, impose a tax on the transfers here in question. Cf. *United States* v. *Field*, 255 U. S. 257. That doubt should be resolved in favor of the taxpayer.

MATTHEWS and GOODRICH agree with this dissent.