CONTINENTAL ILLINOIS BANK & TRUST COMPANY, EXECUTOR UNDER THE LAST WILL AND TESTAMENT AND CODICILS THERETO OF EDWARD E. AYER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52617.   Promulgated January 30, 1934.

*Hugh W. McCulloch*, Esq., for the petitioner.

*J. R. Johnston*, Esq., and *Paul C. Croarkin*, Esq., for the respondent.

## OPINION.

SMITH: The question presented by this proceeding is whether the gift tax imposed by the Revenue Act of 1924 attaches to the value of annuities payable to others than the purchaser thereof, the annuity contracts being purchased in 1925 and the other annuitants paying no consideration or an inadequate consideration therefor.

The provisions of the Revenue Act of 1924 material to a disposition of the issue are as follows:

SEC. 319. For the calendar year 1924 and each calendar year thereafter, a tax equal to the sum of the following is hereby imposed upon the transfer by a resident by gift during such calendar year of any property wherever situated, whether made directly or indirectly, and upon the transfer by a nonresident by gift during such calendar year of any property situated within the United States, whether made directly or indirectly:

1 per centum of the amount of the taxable gifts not in excess of $50,000;

\*      \*      \*      \*      \*      \*      \*

SEC. 320. If the gift is made in property, the fair market value thereof at the date of the gift shall be considered the amount of the gift. Where property is sold or exchanged for less than a fair consideration in money or money's worth, then the amount by which the fair market value of the property exceeded the consideration received shall, for the purpose of the tax imposed by section 319, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

Article 7 of Regulations 67 (Treasury Decision 3648) sets forth the manner of determining the value of a gift which takes the form of an annuity. In subdivision (7) it is stated:

\* \* \* Where the donor purchases an annuity for the donee payable at the end of annual periods throughout the life of the latter the value thereof, as of the date of the gift, should be determined by Table A, a part of this article. \* \* \*

The record in this case does not show that Edward E. Ayer's wife and daughter paid anything for the annuities procured for them by Ayer. The value of the annuities payable to them has been computed by the respondent and the method of computation is not challenged by the petitioner, except that the petitioner raises a question as to the correctness of using a 4 percent table for the determination of the value in view of the fact that the Liberty Loan bonds constituting a gift to the Newberry Library bore 4¼ percent. For reasons which will be stated below, we affirm the Commissioner's determination.

It will be noted from section 319 of the taxing act above quoted that the gift tax is imposed upon the "transfer by a resident by gift during such calendar year of any property wherever situated, whether made directly or indirectly." By section 320 it is provided that if property is sold for less than a fair consideration in money or money's worth, then the amount by which the fair market value of the property exceeded the consideration received shall be taxable as a gift. In *Murry Guggenheim*, 24 B.T.A. 1181, this Board said:

\* \* \* We think it must be conceded that the term "gift" as used in the statute merely designates the transfers selected for tax, i.e., only such transfers as are donative in character have been selected. The term designates the character of the transfer rather than the medium used in effecting it. \* \* \*

The petitioner contends that a donative intent was lacking upon the part of Ayer in making the transfers to the University of Chicago and to the Newberry Library; that Ayer purchased annuity contracts from these institutions and paid a valuable consideration therefor. We are of the opinion, however, that this is not correct. In the first place, there is no assumption that either of these institutions was in the business of making annuity contracts. The institutions would not have entered into the contracts unless the elements of a gift were present. In the second place, at the time of the making of the transfer to the University of Chicago Ayer was 84 years old, and his wife and daughter were 80 and 59 years old, respectively. The application of mortality tables to the annuities payable clearly shows a gift to the institutions. In the third place, the contract made with the University of Chicago specifically provides:

\* \* \* In making the above gift the party of the first part has been prompted both by a desire to co-operate in the furthering of the educational

work of The University of Chicago and by a desire to express his regard for his friend, Mr. Martin A. Ryerson.

Clearly, this indicates an intention on the part of Ayer to make a gift of some value to the University of Chicago and the respondent has determined that a gift was made to each of these educational institutions by Ayer, which gift is not subject to tax by virtue of section 321 (a) (2) of the Revenue Act of 1924.

We also think it clear that there was an expectation on the part of all concerned that annuities would be paid by the educational institutions to Ayer's wife and daughter after Ayer's death; also that a gift may take the form of an annuity to other than the purchaser of the annuity. The regulations provide for the taxation of a gift taking the form of an annuity. It appears to us to be immaterial whether the annuitant is to receive the annuity from the date the contract is entered into or from a future date. Where one purchases an annuity for another he has at least indirectly made a gift to that other and the gift tax is imposed upon transfers made " directly or indirectly."

The petitioner cites article 1 of Regulations 67, to the following effect:

* * * A transfer which is neither a sale nor an exchange does not involve a gift if there is a valid, even if not an adequate, consideration for the transfer.

We are of the opinion that the sentence of the regulation quoted has no application to the situation presented in this proceeding. Clearly, Ayer intended by his contracts with the educational institutions to provide for his widow and daughter, either or both surviving him. The transfers of the property made by Ayer in 1925 were desired to accomplish this purpose. From the date the contracts were entered into the wife and daughter acquired rights of value—rights to receive annuities after the death of Ayer and for the period of their lives. The value of their rights was, in our opinion, an appropriate subject for the imposition of the gift tax. Cf. *Burnet* v. *Guggenheim*, 288 U.S. 280.

The petitioner further contends that the respondent was not justified in determining the value of the annuities to Ayer's wife and daughter by the use of mortality tables, and in its brief states:

* * * it should be particularly noted that under the provisions of the contract dated December 9, 1925, Mr. Ayer delivered to The Newberry Library, United States Fourth Liberty Loan Bonds, bearing interest at 4¼%. The tables used by the Commissioner of Internal Revenue in computing the value of life estates are based upon a return of not more than 4% of interest per annum on the investment. As these Liberty Loan Bonds bore interest during the lifetime of Mr. Ayer at the rate of 4¼%, the use of 4% tables gives an improper result, assuming that it is proper to compute this tax with the aid of any mortality tables.

It must be manifest that in the valuation of the annuities payable to Ayer's wife and daughter resort must be had to mortality tables. The use of such tables in the valuation of annuities has often been upheld by the courts. Cf. *Ithaca Trust Co.* v. *United States*, 279 U.S. 151. The contention of the petitioner that the respondent has erred in using a 4 percent mortality table in connection with the valuation of the annuities payable by the educational institutions is in our opinion without merit. The mere fact that the Liberty bonds turned over to the Newberry Library bore interest at the rate of 4¼ percent is immaterial. The Newberry Library was not required to retain those bonds to maturity or for any particular period. The record contains no evidence that the annuities were not properly valued in accordance with the respondent's regulations. The contention of the petitioner upon this point is therefore not sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*