## Commonwealth *versus* Coleman's Administrator.

1. Administrators may appeal from the valuation for collateral inheritance tax on the personal estate of a decedent, but have nothing to do with the valuation of the real estate.

2. The heirs are the only persons who have a right to appeal from the valuation of the real estate.

3. The law does not associate administrators with the realty; their functions, rights and liabilities are limited to personalty.

4. A decedent's personal property in another state, his debts there exceeding it in amount, is not liable to collateral inheritance taxation.

5. Real estate in another state is not liable to such taxation.

THIS was an appeal by the Commonwealth from the decree of the Register's Court of *Lebanon county*, fixing the amount of valuation for collateral inheritance tax on the estate of Robert W. Coleman, deceased.

Robert W. Coleman having died, and his estate passing collaterally, the appraiser valued his estate in Pennsylvania at $1,387,176.80, being real estate, and also his estate in New York, liable for tax, at $11,714.92, the estate there consisting of both real and personal estate, and the debts exceeding in amount the personal estate.

The administrator of the decedent appealed from the assessment. The court (Pearson, President of Common Pleas) refused a motion to quash the appeal, disallowed the assessment on the New York property, and reduced the whole valuation in Pennsylvania to $567,385.13.

From this the Commonwealth appealed, and assigned for error—Refusing to quash the appeal, and deciding that the estate in New York was not liable for the collateral inheritance tax.

*J. Funck*, for the Commonwealth.—The administrator has no right to appeal from the assessment of the real estate: citing Act February 24th 1834, §§ 62–64, 65, Pamph. L. 84; April 7th 1826, § 2, 9 Sm. L. 147; Stineman's Appeal, 10 Casey 395; Craig's Appeal, 2 Wright 330; Act March 11th 1850, § 1, Pamph. L. 170; April 10th 1849, § 15, Pamph. L. 572; Stinger v. Commonwealth, 2 Casey 423; Christ Church Hospital v. Philadelphia, 12 Harris 229. As to real estate in New York, Act April 7th

[Commonwealth *v.* Coleman's Administrator.]

1826, § 1, 9 Sm. L. 146 ; Commonwealth *v.* Smith, 5 Barr 142 ; Short's Estate, 4 Harris 66 ; Hood's Estate, 9 Id. 114.

*J. Reynolds, F. W. Hughes* and *A. L. Boughter,* for appellee. —On the question of the right of administrator to appeal, cited Act April 10th 1849, § 14; April 7th 1834, § 2; April 10th 1849, § 15; Act February 24th 1834, § 62, *supra.* As to real estate in New York, McKeen *v.* Northampton Co., 13 Wright 519; Whitesell *v.* Same, Id. 526.

The opinion of the court was delivered, June 20th 1866, by

WOODWARD, C. J.—The most material question upon this record is, whether the administrator of a decedent, where an estate is liable to the collateral inheritance tax, is entitled to appeal from the valuation made by the register's appraiser to the Register's Court, in a case where the tax falls upon real estate. There was no appeal in this case except by the administrator, and this the Register's Court refused to strike off, held that it was well taken, and, after investigation of the estate, reduced the valuation from a million of dollars to a sum less than two hundred thousand, the effect whereof was to reduce the tax from $69,358.84 to $28,369.25, a loss to the Commonwealth and a gain to the heirs of nearly $41,000.

From this decree the Commonwealth appeals to this court, and complains because the administrator's appeal from the primary valuation was entertained. The question is very important, not only to the Commonwealth, but to the heirs of Mr. Coleman, for the 12th section of the Act of 1849, Purd. 151, gives persons dissatisfied with the appraisement and assessment the right of appeal to the Register's Court only within thirty days after the appraisement and assessment, and if the wrong party has appealed in this instance, the right parties have slipped their time. Besides, if the administrator had not the right to appeal, the Register's Court had not jurisdiction, and all that was done was *coram non judice.*

Our first Act of Assembly, imposing a tax upon collateral inheritances, was passed the 7th day of April 1826: see Pamph. L. 227. This act fixed the tax at 2½ per cent. upon all estates not valued at less than $250 passing from any person who may die seised or possessed of such estate, to any person or persons or to bodies politic or corporate, in trust or otherwise, other than to or for the use of father, mother, husband, wife, children and lineal descendants born in lawful wedlock.

The 2d section provides that executors and administrators shall, before they pay any legacy, or distribute the shares of any estate passing as aforesaid, pay to the county treasurer $2.50 out of every $100 they may hold for distribution, and when any species

of property, other than money or real estate, shall pass as afore-
said, the tax or duty shall be paid upon the appraised value there-
of, as filed in the register's office, or what the same may actually be
sold for, and executors and administrators shall have full power
to sell, if necessary, so much of the said property as will enable
them to pay the tax, and moreover they are required to lodge
information with the county commissioners of any and all *real
estate* of every kind of which their respective testators and intes-
tates have died seised, and which has passed to any person or per-
sons, or bodies politic or corporate, other than those mentioned in
the 1st section.

By the 3d section the county commissioners were required,
when they sent their precepts to assessors, to enjoin them dili-
gently to inquire after and take an account of all *real estates*
which every preceding year had passed in the manner mentioned
in the 1st section of the act, and with the aid of the assistant
assessors to put a fair and just valuation on the same, according
to the market price thereof, and to make return of such valuation
to the said commissioners, who were to proceed to examine and
pass the same, and then lodge it with the clerk of the Quarter
Sessions, to be laid before the judges thereof for their revisal and
approbation at the next term, which having been had, the clerk
was to return the same to the county commissioners, who were to
issue their warrant to the proper collector of the county tax, to
collect the same in the same manner county taxes are collectable,
and the collector was to receive $2\frac{1}{2}$ per cent. for collecting the
same.

Section 4 made the amount of the said tax and the expenses
of collection a *lien on the estate* subject to the tax from the death
of the testator or intestate, until they shall have been fully paid
and satisfied.

These are all the material provisions of the original enactment
imposing a duty or tax on estates passing by will or inheritance out
of a lineal into a collateral line, and it is observable that the only
duty with which administrators are charged in respect to *real
estates* so passing, is to lodge information of the fact with the
county commissioners.

The tax became a lien upon such real estate, and all the duties
of valuation, assessment, collection and payment over, were im-
posed upon the county commissioners or township assessors and
collectors, without any co-operation whatever of the personal
representatives of the decedent.

The legislature next touched this subject in the act reported
by the codifiers relating to executors and administrators, which
was passed the 24th February 1834, the 62d section of which
provides that the executor or administrator paying any legacy or
share in the distribution of any estate, subject to the collateral

inheritance tax, to any person not being the father, mother, husband, wife or lawful issue of the decedent, shall deduct therefrom at the rate of $2\frac{1}{2}$ per cent., or if not money, he shall demand payment of a sum to be computed at the same rate upon the appraised value thereof, for the use of the Commonwealth; and whenever any such legacy shall be charged upon or payable out of real estate, the heir or devisee, before paying the same, shall deduct therefrom at the rate aforesaid, and pay the amount so deducted to the executor, and the same shall remain a charge on such real estate until paid, and the payment thereof shall be enforced by a decree of the Orphans' Court, in the same manner as the payment of such legacy might be enforced.

By the 64th section executors and administrators are required to pay to the county treasurer, for the use of the Commonwealth, the moneys retained in their hands on account of legacies and distributive shares.

The 65th section enjoins them, like the Act of 1826, to give notice to the county commissioners of the passage of any real estate to collaterals.

The 69th section relates to the duty of refunding a share of the tax in the contingency of subsequent debts appearing, and is not material to our present question.

This act, like that of 1826, makes a plain distinction between the modes of levying the tax upon real and personal estates. "Legacies," and "shares in the distribution of estates," are personal property, and pass through the hands of executors and administrators, and, in respect of the collateral inheritance tax upon such interests, they have active duties to perform, and are legal parties; but in respect of that tax upon the *realty*, the only duty enjoined upon them by the Act of 1834, like that of 1826, was to give notice to the county commissioners.

The Act of 22d April 1846 raised the tax to 5 per centum upon the valuation, but no otherwise related to the subject.

We now come to the Act of 10th April 1849, Pamph. L. 571, the 12th section of which made a material alteration in the mode of fixing the valuation of real estate subject to this tax. The county commissioners were to have nothing more to do with the matter; but the register of wills of the county in which letters testamentary or of administration shall be granted, shall at the same time appoint one of the appraisers, whose duty it shall be to put a fair valuation on said real estate; and the assessor of the ward or township, in which such decedent died, shall be another appraiser; and it shall also be the duty of said appraisers to make a fair and conscionable appraisement of the personal estate of the decedent; and it shall further be their duty to fix the then cash value of all annuities and life estates growing out of said estates, upon which annuities and life estates the collateral inheritance tax shall be

immediately payable out of the estate at the rate of the said valuation: provided, that any person or persons dissatisfied with said appraisement or assessment shall have the right to appeal within thirty days to the Register's Court of the proper county, on paying or giving approved security to pay all costs, together with whatever tax shall be fixed by said court.

The 13th section regulates the tax upon estates in remainder, whether real or personal, and upon bequests and devises to a person named as executor; but neither of these sections imposes duties upon executors or administrators in respect to the valuation of real estate.

The 14th section fixes the rate of interest on unpaid taxes; and the 15th and 16th sections prescribe in detail the duties of the register, in respect to collecting and accounting for them.

By the Act of 11th March 1850, the ward or township assessor was relieved from the duty of valuation, and it was committed wholly to the appraiser appointed by the register; and the right of appeal was continued as provided in the Act of 10th April 1849.

These are the essential provisions of the several Acts of Assembly that relate to the collateral inheritance tax upon real estate; and it is impossible to see in them any legislative intent to make executors and administrators parties to the proceeding.

It is true that the tax is assessed upon the value of the estate that remains after payment of debts; that executors and administrators are the proper parties "to adjust and pay the debts of decedents;" and though the personal estate is primarily the fund for payment of debts, it is also true that in Pennsylvania lands are also assets for the payment of debts. But they are not assets in the hands of administrators, nor indeed in the hands of executors, unless made so by the will of the testator; but are rather assets in the hands of the Orphans' Court, to be ordered to sale as often and when the personal representatives can show that court, that necessity to sell or mortgage them exists. Administrators do not represent the realty of the decedent. They give no bond that covers it, and though they may collect rents for it, they cannot touch it even for the payment of debts except by order of the Orphans' Court, and then only upon giving an additional bond for the due application of the proceeds.

It is their duty to pay the collateral inheritance tax upon the personal estate before they make distribution; and giving the right of appeal, as expressed in the 12th section of the Act of 1849, a liberal construction, I suppose it would not be doubted that they might appeal from a valuation of the personal estate, made by the register's appraisers; but with the valuation of the real estate they have nothing to do. They have not even the right to pay the tax upon real estate out of the personalty. It wholly

[Commonwealth *v.* Coleman's Administrator.]

belongs to the *heirs* to question the valuation of the real estate, and to pay the tax. They are the only parties who have a right to be "dissatisfied" with the valuation of the realty, and therefore are the only parties who have the right of appeal.

I see that very great inconvenience, and perhaps sometimes injustice, may result by limiting the right of appeal to those in succession, for they may be many, widely scattered, infants and *femes covert*, and some representative of such parties ought to be provided by law, but the legislature alone can do this.

The collateral inheritance tax was originally a legislative invention; was raised to 5 per cent. at a period of great embarrassment in the financial history of the state; has contributed very essentially to the firm establishment of the public credit; and has been so long approved by the people, that it is not likely ever to be given up; but resting entirely upon statutory rules, it must be administered according to the very spirit and letter of the statutes. We have no dispensing and no enlarging power in respect to it. If the legislature have not given administrators the right of appeal, we cannot give it. The dissociation of them, in the legislative mind, from such a subject, was according to legal analogies, for in no respect does the law associate administrators with realty; their functions, rights and liabilities are limited to personalty.

We conclude, therefore, that the Register's Court erred in sustaining the appeal of the administrator in this instance. We find nothing else upon this record to correct. The court were clearly right in deciding that the decedent's personal estate in the city of New York was not liable to be taxed, because his debts exceeded its amount, and his real estate there was not subject to the tax because beyond our jurisdiction.

But in reversing the judgment on the ground that the appeal of the administrator gave the Register's Court no jurisdiction of the case, we have ourselves no jurisdiction to modify the decree of the Register's Court, nor to affirm any part of it. All we can do is, that which the court below ought to have done, dismiss the appeal of the administrator; and the effect of this will be to confirm a valuation which we fear was excessive, and which, if we could enter into the question, we would be likely to reduce somewhat, if not as much as was done by the court below.

But as the record is, our judgment must be a reversal of the decree below, and a dismissal of the administrator's appeal.