## Hartman's Estate

*Harold E. Martin,* for Commonwealth.
*Louis S. May,* for appellant.

APPEL, J., December 31, 1940.—This proceeding is an appeal to the Orphans' Court of Lancaster County from a decision of the Register of Wills of Lancaster County

relating to a "supplemental resident inheritance tax appraisement" filed by the Department of Revenue of the Commonwealth of Pennsylvania in the office of said register of wills on May 18, 1940. For purposes of convenience, and to distinguish this appraisement from the first supplemental resident inheritance tax appraisement filed in said office on May 6, 1932, the present supplemental appraisement will hereinafter be referred to as the "additional supplemental appraisement." The original tax appraisement was filed in said office on October 27, 1930. The several tax appraisements were filed and the taxes assessed under the provisions of the Act of June 20, 1919, P. L. 521, and amendments thereto, "Providing for the imposition and collection of certain taxes upon the transfer of property passing from a decedent . . ."

Sallie A. Hartman, a resident of Lancaster County, Pa., having first made her last will and testament, dated March 3, 1923, died on September 14, 1930, whereupon, on September 17, 1930, said will was probated and letters testamentary thereon were granted by the Register of Wills of Lancaster County, Pa., to Maribel Hartman Hughston, the executrix named in said will, and who was the only daughter of testatrix and the sole legatee under said will.

On October 28, 1930, the original transfer inheritance tax appraisement was filed in this estate appraising a piece of real estate at $7,500 and five items of personal property at $13,890.34, or an aggregate appraisement of $21,390.34. The tax due on this appraisement was determined on the basis of a tax statement filed on December 8, 1930, and was paid to the register of wills on the same date.

On May 6, 1932, a supplemental inheritance tax appraisement was filed making the following appraisement:

"Amount of income on trust estate of Dr. Samuel Hartman, deceased, due Sallie A. Hartman, at the date of her death, September 14, 1930, and which has been in litigation until May 2, 1932, the day it was received by

Maribel H. Hughston, executrix, in the estate of Sallie A. Hartman, deceased, $14,989.59."

The tax due on this appraisement was determined on the basis of a tax statement filed on May 13, 1932, and was paid to the register of wills on the same date.

On March 30, 1940, the executrix filed in the office of the register of wills "The first and final account of Maribel Hartman Hughston, executrix of the last will and testament of Sallie A. Hartman, deceased, who died on September 14, 1930." In this account she charged herself with the items of personal property set forth in the original tax appraisement and with the item set forth in the supplemental tax appraisement filed on May 6, 1932, and also with the following item:

"May 1939 Received compromise settlement of interest of Maribel Hartman Hughston, sole heir at law and legatee of Sarah (Sallie) A. Hartman, deceased, judgment against Earl S. Davis, former trustee of the estate of Samuel B. Hartman, deceased, $31,314.79.

" (The above item represents the recovery in the suit of the beneficiaries in the estate of Samuel B. Hartman against Earl S. Davis, former trustee, under the will of Samuel B. Hartman, deceased, which item was received on or about May, 1939, it having been tied up in litigation until the latter date.)"

On May 18, 1940, following the filing of said account by the executrix, the Department of Revenue filed in the office of the register of wills what is called a "Supplemental Resident Inheritance Tax Appraisement," and which we designate herein as the "additional supplemental appraisement," in which was made the following appraisement:

"5/2/39—Rec'd compromise settlement of interest of Maribel Hartman Hughston, sole heir at law and legatee of Sarah (Sallie) A. Hartman, deceased, judgment against Earl S. Davis, former trustee of the estate of Samuel B. Hartman, deceased, $31,314.79."

It is apparent that the additional supplemental appraisement sets forth in practically identical language as

in the account the appraisement of the last charge item in the account, namely, said sum of $31,314.79, with the same description of the source from which it was received and the reason for its reception.

From this last additional supplemental appraisement this present appeal has been taken to this court by Maribel Hartman Hughston "individually and as executrix": Commonwealth v. Coleman's Administrator, 52 Pa. 468.

Appellant in this proceeding has filed and assigned the following:

"Reasons for appeal from supplemental transfer inheritance tax appraisement filed May 18, 1940, in the amount of $31,314.79.

"(a). The said transfer inheritance tax appraisement, filed May 18, 1940, is a legal nullity.

"(b). Full disclosure of the income or interest due as of the date of the death of Sallie A. Hartman, deceased, from the trust estate of Samuel Hartman, deceased, was made to the transfer inheritance tax appraisers on May 6, 1932, at the time that a supplemental transfer inheritance tax appraisement was filed, wherein the appraiser appraised the following:

"'Amount of income on trust estate of Dr. Samuel Hartman, deceased, due Sallie A. Hartman at the date of her death, September 14, 1930, and which has been in litigation until May 2, 1932, the day it was received by Maribel H. Hughston, executrix in the estate of Sallie A. Hartman, deceased, $14,989.55.'

"(c). That the said supplemental appraisement filed on May 6, 1932, was not appealed from by any of the parties in interest.

"(d). That the field appraiser had sufficient opportunity and did examine the matter of the income or interest due the estate of Sallie A. Hartman, deceased, from the trust estate of Samuel Hartman, deceased.

"(e). That when he filed his supplemental appraisement, dated May 6, 1932, covering the said interest or income, he did so in the exercise of his deliberate judgment.

"(*f*). That the said sum was the then value of the amount in litigation.

"(*g*). That there was no fraud, accident, or mistake in connection with the said supplemental appraisement of May 6, 1932.

"(*h*). That the supplemental appraisement filed May 18, 1940, undertakes to appraise the same interest due the estate of Sallie A. Hartman from the trust estate of Samuel Hartman, deceased."

A hearing was had in this matter at which testimony was taken, and H. J. Taylor, who was the State appraiser who made the original transfer tax appraisement and also the supplemental transfer tax appraisement, was examined at length particularly as to the supplemental transfer appraisement. From his testimony we find that as the result of a conference between himself and Frank S. Groff, Esq., at that time attorney for the executrix, the only disclosure of income or interest apparently at that time due, as of the date of the death of Sallie A. Hartman, deceased, to her estate from the trust estate of Samuel Hartman, deceased, was a specific sum of money which had been received by the executrix of the Sallie A. Hartman estate amounting to $14,989.59. The words used by the appraiser in the supplemental transfer tax appraisement were in effect the words which were dictated by said attorney for the estate to the State appraiser. It further appears from his testimony, and this court so finds, that the field appraiser did not explore or examine generally the matter of the income or interest or money due the estate of Sallie A. Hartman, deceased, from the trust estate of Samuel Hartman, deceased, and had definite, specific, and precise knowledge and information only of the specific sum of $14,989.59 which then had been actually received by this estate. For this reason it can be said that when the State tax appraiser filed his supplemental transfer tax appraisement covering said interest or income he did so in the exercise of his deliberate judgment only to the extent of appraising said sum of $14,-

989.59 about which he had information, knowledge, and advice that it had been received. He had no information or advice as to the possibility of any indefiniteness or uncertainty in the amount of money to accrue to the estate, or that other or additional sums of money might accrue to the estate. Accordingly he gave no consideration in appraising any thing or claim which had a value or any sum of money other than the specific sum so actually received.

From the fact that additional money was subsequently received by this estate and received solely on the basis that it was due to decedent at the time of her death, although the amount was not ascertainable at the time of her death and apparently was not definitely ascertained until long after her death, the conclusion is drawn that the sum of $14,989.59 was not "the then value of the amount in litigation," that is, either at the time of decedent's death or at the time when the supplemental appraisement was filed.

· It may be true and be arguable if the State appraiser who made the supplemental transfer tax appraisement had been advised or informed of the possibility of other sums being received by this estate, through litigation or otherwise, and he had appraised the whole claim or estimated amount to be received, or the value of an unliquidated claim, at the date of decedent's death, to be received in the future, as of the value of $14,989.59, then in such a case he might have been said to have been exercising his deliberate judgment in fixing a present estimated value on the claim; but the evidence before this court at this time does not warrant any finding that the whole claim or any estimated amount to be received, or that any unliquidated claim in litigation, was appraised at any present value—or value at the date of decedent's death.

In view of the foregoing, the fact that no appeal from the supplemental transfer tax appraisement was taken has no bearing on the question raised in the present appeal. That particular supplemental appraisement only became binding to the extent of what was then and therein

appraised and did not bar the additional supplemental appraisement of items which were not contained in the supplemental appraisement or appraised thereby.

In arriving at our decision in this case it must be remembered that the executrix filed no inventory as required by the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 11(a), 20 PS §442, nor did she file an inventory of after-discovered property as required by section 11(h) of the same act: 20 PS §449. In fact no inventory and no inventory of after-discovered property was ever filed. The executrix did give to the tax appraiser certain information upon which the orignal tax appraisement and the supplemental tax appraisement were based and filed. But it does not appear that she ever gave the tax appraiser any information as to the "after-discovered property" which became the subject of the additional supplemental appraisement other than that contained in her account as executrix.

Counsel for appellant cited Ernst's Estate, 317 Pa. 367, in support of his contention. The facts in Ernst's Estate are entirely different from the facts in this estate. In that estate the Supreme Court affirmed the lower court in a per curiam opinion, and quoted from the opinion of the late Hon. William N. Appel, president judge of this court (44 Lanc. L. R. 349), as follows:

"We find as a fact that a full disclosure of the contracts was made by the executors to the tax appraiser; that they were before the field appraiser for examination and appraisal; that he had full opportunity to and did examine them; that when he appraised the annuity on each contract, but not the principal, he did so in the exercise of his deliberate judgment that the principal was not liable for the tax."

In the present case from the testimony produced we are of the opinion and accordingly find that at the time of the making of the first two appraisements there was not a full disclosure of all the assets of this estate nor from evidence before us would it have been possible to have done so.

This court, in view of the foregoing, is of the opinion that it is unnecessary to discuss the question as to whether there was fraud, accident, or mistake in connection with the making of the supplemental appraisement of May 6, 1932. That appraisement stands alone for what it contains and for only what it contains, namely, "Amount of income"—the day it was received—"$14,989.59." And it seems to this court that the filing of the additional supplemental appraisement was in harmony with the previous conduct of the parties. It was undoubtedly known to the executrix at the time when the original appraisement was filed that there was money due to this estate from the Samuel B. Hartman estate. Apparently that asset of this estate was intentionally excluded from the original appraisement, because it was unliquidated and the amount unknown, with the intention of the parties that when the unliquidated amount or amounts should definitely be determined then a disclosure of the same would be made for tax purposes. This was done when the supplemental tax appraisement was filed. It follows logically and naturally that when further additional sums were received a further disclosure of this fact would be made so that an additional supplemental appraisement could be filed.

Finally this court finds that the additional supplemental appraisement in this estate filed on May 18, 1940, does not appraise or undertake to appraise the same money or interest due to this estate from the trust estate of Samuel B. Hartman, deceased, as was set forth and appraised in the supplemental appraisement filed May 6, 1932, nor does this supplemental appraisement filed May 6, 1932, appraise any asset which was appraised in the additional supplemental appraisement. The additional supplemental appraisement appraises property of decedent passing upon her death which was not previously appraised and the Commonwealth of Pennsylvania is entitled to transfer inheritance tax on this property.

The appeal is dismissed at the cost of appellant.