## Harris Estate

*Fisher, Ports & May*, for accountant.
*Robert M. Laird*, for Commonwealth.

GROSS, P. J., December 22, 1949.—Louis S. Harris died December 21, 1948, intestate, unmarried and without issue, leaving to survive him as his only heirs at law and next of kin three brothers, three sisters and a nephew, all of whom are of full age and sui juris.

Decedent was possessed of ample personal property to pay all of his debts, funeral expenses, grave markers and expenses of administration, and died seized of real estate, situate in the Borough of Glen Rock, which the heirs, within one year after decedent's death, agreed to sell at private sale for the sum of $20,000.

In order to relieve the real estate of the possibility of any lien of debts, not of record, instead of proceeding for that purpose under section 17 of the Fiduciaries Act of June 7, 1917, P. L. 447, the heirs chose to petition this court, on July 5, 1949, for the authorization and approval of a private sale, for the purpose of distribution under sections 23 and 36 of the Orphans' Court Partition Act of June 7, 1917, as amended by the Act of May 13, 1931, P. L. 120.

The private sale was approved by the court and in accordance with the prayer of petitioners, the court

appointed a trustee to consummate the sale at the price of $20,000.

After the sale was consummated, the transfer inheritance tax appraiser filed his appraisement of the real estate, for collateral tax purposes, at $20,000, and the trustee filed his account, in which he charged himself with the sale price and took credits there against for the costs of the court proceedings, consisting of clerk of court's fees, advertising, premium on trustee's bond, trustee's fees, at the rate of three percent and attorney's fees of 1½ percent, totaling the sum of $1,080.73. No exceptions were filed to the account and, inasmuch as section 35 of the Partition Act of 1917 directs the payment of costs and expenses of partition proceedings, we will regard the credits of $1,080.73 as proper costs and expenses of the proceedings and consider them as proper credits in the account so far as distribution among the heirs is concerned.

The trustee also takes credit in his account for the sum of $1,891.93, the amount paid by him as the collateral tax, at 10 percent on $18,919.27, the balance due on the account for distribution after deducting the above costs of $1,080.73.

The register of wills, as agent for the Commonwealth, objects to the allowance of the credits of $1,080.73, as deductions against the collateral tax and claims the tax thereon at the rate of 10 percent or in the amount of $108.07. The heirs of decedent contend that the sale of the real estate was a judicial sale for the purpose of relieving it from the lien of debts and thus enabling them to effect a sale within one year after decedent's death, and that therefore the costs of the proceeding under section 35(b) of the Partition Act must be regarded as expenses of administration; and, under section 2 of the Act of June 20, 1919, P. L. 521, as last amended by the Act of May 27, 1943, P. L. 757, are deductible items in the computation of the collateral tax payable on the real estate.

It is a fundamental principle of the law of this State that legal title to the personal estate of decedent passes at his death to his personal representatives as of the date of his death, and that it is primarily the fund for the payment of decedent's debts.

It is also fundamental that the legal title to the real estate of a decedent passes at his death eo instanti to his heirs or devisees. Of course lands of decedent are also assets for the payment of decedent's debts but (except as affected by the Fiduciaries Act of 1949, effective January 1, 1950) lands of a decedent are not assets in the hands of the administrators, nor, indeed, in the hands of executors, unless made so by order of the orphans' court, or the will of the testator. Unless the real estate or any part of it was needed for the payment of decedent's debts, collateral inheritance tax was payable on its value as of the day decedent died: Commonwealth v. Coleman's Administrator, 52 Pa. 468; and Paul's Estate, (opinion by Judge Gest) 1 D. & C. 231.

This real estate was sold with the approval of the court, for the purpose of distribution, as already pointed out, under the Partition Act of 1917. The expenses of the court proceeding were not debts of decedent at the time of his death, nor were they expenses of administration of his estate because the administrator did not and could not associate himself with the realty because the personal estate was ample to pay all his debts. The private sale of the real estate was for the sole convenience of the heirs and was wholly unnecessary to and independent of the settlement of the estate. The heirs had no right to elect to take the proceeds of the sale of the real estate instead of the real estate itself.

The heirs, of course, had a right to sell the real estate. The legal impediment of possible liens thereon for the debts of decedent, not of record, could have been obviated by proceedings under section 17 of the

Fiduciaries Act of 1917, for that purpose; and, if that proceeding had been invoked by the heirs, they would have been free to sell the real estate at a public or private sale through their own negotiations, or those of a real estate agent, and, if sold through the latter, who would contend with any degree of confidence of success that the real estate agent's commission for effecting a sale would be a legal deductible item as against the collateral tax? We see no substantial difference between a sale thus effected and the means employed by the heirs through the medium of an order of sale for distribution, through the orphans' court. Resort to either proceeding had to be initiated by the heirs to whose benefit alone either proceeding would inure, and it is they alone who, we think, should bear the burden of the proceeding adopted.

Section 35(a) of the Partition Act of 1917 provides that the costs in all cases of partition in the orphans' court, with reasonable allowance to petitioners for counsel fees, are to be taxed by the court, or under its direction, and shall be paid by all of the parties in proportion to their several interests. This section refers to the cases where the real estate was accepted at the appraisement and decreed the heirs without sale and the court had no moneys in its hands to distribute.

Section 35(b) of the same act provides that, in all cases of the sales of real estate, under the provisions of the act, it shall be lawful for the court to order and decree that the costs and expenses of proceedings, including a reasonable compensation to the executor, administrator or trustee, by whom the sale shall be made, shall be paid on the confirmation of such sale out of the proceeds thereof. This section refers to the cases where there has been a sale of the real estate and the proceeds are in court for distribution. Considering both paragraphs of this section in pari ma-

teria, it would seem to be clear that the parties themselves are required to pay all costs of a partition proceeding and that being so, the Commonwealth should not be asked to make any contribution thereto through a reduction of collateral tax resulting from deducting the costs of the proceedings from the appraisement of the real estate sold under the court's order.

Counsel for the heirs have not pointed to, nor have we, through our own research, been able to find any decision on the exact issue here involved.

In Gilbert, Pennsylvania Inheritance Taxation, at pages 371-372, discussing this question, the author sets forth as follows:

"Where realty was sold by administrators, under a court order, for a consideration of $10,230, and their account of the proceeds, filed for audit, showed a net balance of $9,369.08, presumably after deduction of commissions, counsel fees, costs, and other expenses, it was inferentially held that such expenses were not deductible in computing clear value for taxation: Coates' Est., 32 Lanc, L. R. 1. Where realty is converted by the will of its deceased owner, or its sale is necessary to pay the debts of an intestate owner, it would seem that the expenses incurred in such sale were the result of a condition or situation created by the decedent, and existing at his death, and that, accordingly, such expenses should be allowed; but where realty passes direct to the heirs or devisees without any condition imposed or created by the deceased owner, expenses incident to its later sale result from the voluntary acts of the new owners in dealing with their own property, after the realty had passed to them, and should therefore not be deducted."

In Stafford Estate, 152 Pa. Superior Ct. 551, the personal estate of decedent was sufficient to pay all debts, funeral expenses and costs of administering the estate. The heirs effected an amicable partition

of the real estate between them. The executor, who was an attorney, held numerous conferences with all of the heirs except one, through which the agreement of partition was effected. In his account of the personal estate, the executor made a charge of three percent commission on the appraised value of the real estate, and his counsel claimed a fee equal to one half the amount claimed by the executor. The Superior Court held that neither the executor nor the counsel were entitled to any compensation for services rendered in the matter of the amicable partition of the real estate; that, if either or both of them were to receive compensation, they had to look to the individuals who employed them, and not to the estate of decedent. See also Taber's Estate, 257 Pa. 81; Lines' Estate, 155 Pa. 378, 61 C. J. 1704, sec. 2592.

In Yerkes' Appeal, 99 Pa. 401, the Supreme Court held that an executor or administrator, who becomes a party to an issue devisavit vel non, must look to those who authorized him to engage therein and cannot charge his expenses to the estate he represents unless the latter is benefitted by the proceeding. The direct issue here involved came up before the Surrogate's Court of New York in In re Elting's Estate, 140 N. Y. S. 238, where the court held that "where a will gave to executors merely a discretionary power of sale of real estate, the necessary expenses of converting the real estate into cash will not be deducted in making an appraisal to fix a transfer tax."

This same question came up in the Supreme Court, Appellate Division, of New York in In re Sherman's Estate, 166 N. Y. S. 19, where the court cites and quotes with approval Elting's Estate, supra.

In Paul's Estate, supra, in an able opinion by Judge Gest, it is pointed out that it is the transfer of property by will or the intestate law which is taxed, and that there is no distinction between real and personal

property. The court further points out that it is at decedent's death that the transfer takes effect.

We conclude, therefore, that the costs and expenses of selling the real estate of this decedent are not deductible from the appraisement of the real estate for collateral tax purposes. This conclusion will be reflected in our schedule of distribution.